**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TITCHE–GOETTINGER COMPANY, Respondent.**

**No. 29155.**

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvyn I. Monzack, Atty., N.L.

R.B., Washington, D. C., Elmer P. Davis, Director, Region 16, N.L.R.B., Fort Worth, Tex., Abigail C. Baskir, Litigation Services, Washington, D. C., for petitioner.

Hugh M. Smith, Dallas, Tex., for respondent.

Before COLEMAN, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

This matter is before us on petition of the National Labor Relations Board to enforce its order that respondent, Titche-Goettinger Company, Dallas, Texas, cease and desist from refusing to bargain collectively with Retail, Wholesale and Department Store Union, AFL-CIO, as the exclusive collective-bargaining representative of a unit composed of food-handling employees of the Employer at two of its stores in Dallas.

On April 24, 1968, a representation election was held.[1] A total of 100 ballots were cast—49 in favor of the Union, 46 against, 2 challenged. The 3 remaining ballots cast were voided by the Board Agent on grounds that they were improperly marked. These 3 ballots assume critical proportions because of the narrow margin by which the Union was declared to be successful. We have personally examined reproduced copies of the ballots in question. Printed instructions on the face of the ballot require the voter to indicate whether he wishes to be represented for purposes of collective bargaining by the Union and instruct him to "MARK AN 'X' IN THE SQUARE OF YOUR CHOICE." Beneath this direction appear two blank squares, one with the word "YES," the other with the word "NO" placed above the squares. Each of the voided ballots was marked by the respective voter with the word "NO" on the blank reverse side of the ballot form and not in the desig-

1. At a prior election the Employer prevailed. However, upon hearing of objections filed by the Union, the Board remanded the representation case for a second election.

nated square. The ballots were folded when handed to the employees with only the blank portion thereof visible. Only the so-called valid votes were counted, which totaled 95. The 3 "void" votes were not counted, and the 2 challenged ballots, being considered insufficient to affect the outcome of the election, were not opened and the challenges were not resolved. Obviously, had the alleged void ballots been tallied as anti-union representation votes, a 49–49 tie would have resulted, and the Union would have failed to attain a majority as required by 29 U.S.C. § 159(a).

The Board Agent's action in voiding the 3 ballots, and the subsequent ex parte approval thereof by the Trial Examiner and the Board, constitute such an extreme deviation from the Board's avowed "general rule to count all ballots where the voters' intent has been clearly manifested even if the voter has not followed the proper designation procedure," [2] that were it not for the 2 remaining challenged ballots we would deny enforcement of the Board's order. However, because of the 2 challenged votes which were neither opened nor counted (see Board brief p. 5, n. 4), and which will, therefore, affect the total tally and the final outcome of the election, and also because of the additional objections raised by the Employer, creating unresolved issues of fact determinable properly only after a hearing, we remand for a full hearing. United States Rubber Company v. N. L. R. B., 5 Cir., 1967, 373 F.2d 602; N. L. R. B. v. Ortronix, Inc., 5 Cir., 1967, 380 F.2d 737; N. L. R. B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889; Tyler Pipe and Foundry Company v. N. L. R. B., 5 Cir., 1969, 406 F.2d 1272. We, therefore, require on remand that the 2 challenged ballots be opened and the facts concerning the challenges be resolved.

The Employer objected to the election primarily on the basis of the 3 voided ballots, and additionally asserted 5 Objections to the conduct of the election, contending there was improper, intimidating and coercive conduct of the Board Agent, Union observers and Union supporter employees. Affidavits attesting to these irregularities were attached to the Objections. Two of the affidavits of employees whose ballots had been voided show that the affiants intended to vote against union representation. Subsequently, the Acting Regional Director conducted an investigation, overruled the Employer's Objections, and on August 6, 1968 certified the Union as the exclusive representative for collective bargaining. The Employer requested a Board review of the Regional Director's summary overruling of its Objections, which request was denied. The Employer refused to bargain with the Union, thus precipitating the unfair labor practice Complaint and Notice of Hearing, duly answered by the Employer. Thereafter, General Counsel for the Board filed a Motion for Judgment on the Pleadings on the basis that all issues involved in the unfair labor proceeding had been resolved in the prior related representation case, which the Employer timely opposed. The Trial Examiner, finding no unresolved issues requiring an evidentiary hearing, granted the Motion for Judgment on the Pleadings. The Board adopted the findings, conclusions and recommendations of the Trial Examiner.

The Employer admittedly refuses to bargain with the Union in order to test the validity of the certification. In N. L. R. B. v. Smith Industries, Inc., *supra,* we recognized the utility of this device: "A refusal to bargain is a common method for challenging the Board's certification of a union since Board decisions in representation proceedings usually are not reviewable by the courts of appeals," 403 F.2d at 891. See also N. L. R. B. v. Air Control Products of St. Petersburg, Inc., 5 Cir., 1964, 335 F.2d 245; Neuhoff Brothers Packers, Inc. v. N. L. R. B., 5 Cir., 1966, 362 F.2d 611; Home Town Foods, Inc. v. N. L. R. B., 5 Cir., 1967,

---

2. The quotation is from General Counsel's brief.

379 F.2d 241; N. L. R. B. v. Genesco, Inc., 5 Cir., 1969, 406 F.2d 393.[3]

■ The Board in its brief contends that in the absence of "substantial and material factual issues" which would warrant setting aside the election, the Trial Examiner was not required to hold a hearing in the unfair labor practice proceeding, despite the fact that the Company was denied a hearing at the related representation proceeding. The Board correctly states the law,[4] but we disagree with its premise. As we have already indicated, there are substantial questions which remain at issue, including the factual disputes raised by the Employer's Objections to the election because of claimed irregularities in the conduct of the Board Agent and Union representatives. Also at issue is the final result of the election when the 2 challenged votes are opened and resolved, which must be done in light of our opinion. A full hearing is, therefore, necessary. General Counsel for the Board contends that the Acting Regional Director properly determined that "the marking on the ballot on the reverse side is too radical a departure from the accepted norm in marking ballots to permit con-

jecture as to the voters' intent." Such a conclusion is hardly consistent with the admitted Board policy of attempting to give effect to the voters' intent whenever possible. See Western Electric Company, Incorporated, 97 N.L.R.B. 933; N. L. R. B. v. Whitinsville Spinning Ring Co., 1 Cir., 1952, 199 F.2d 585.

■ The three contested ballots unmistakably show an unambiguous, legible "NO," albeit its appearance on the blank side of the form. Additionally, as already indicated, 2 of the voters whose ballots were voided voluntarily submitted affidavits to the Regional Director, declaring their intention to vote against the Union. The intent to reject union representation is clear, considering that the only question asked on the ballot is, "Do you wish to be represented for purposes of collective bargaining by RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL-CIO."[5] Accordingly, the 3 votes should have been recorded for the Employer.

Under the circumstances, we deny enforcement of the Board's order and remand for a full hearing in accordance with this decision.

---

3. "Representation proceedings do not come before us by direct review, but where an unfair labor practice is charged for refusal to bargain, and the employer has refused to recognize the certification, the election proceedings are then before the court for review and the representation cases and the unfair labor practice case become as one and the complete record is fully reviewable. United States Rubber Company v. N.L.R.B., 5 Cir., 1967, 373 F.2d 602, * * * *" N.L.R.B. v. Ortronix, Inc., 5 Cir., 1967, 380 F.2d 737, 739.

4. See N.L.R.B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889; N.L.R.B. v. Air Control Products of St. Petersburg, Inc., 5 Cir., 1964, 335 F.2d 245.

5. In Knapp-Sherrill Co., 171 N.L.R.B. 171 (1968), relied on by the Board, a blank piece of paper on which was written the word "NO" was declared to be invalid by the hearing officer. The Board in that case, however, said, "In agreeing that this is a void ballot we rely solely on the fact that a blank sheet of paper is not an official ballot." In the same case, the Board agreed that a ballot marked "X" above the word " 'Yes' within the larger Yes portion of the ballot although not in the designated square" was a valid "yes" vote.
In Western Electric Company, Incorporated, 97 N.L.R.B. 933, the Board considered valid nine ballots challenged on recount notwithstanding deviations in markings in the designated squares.