**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MARTZ CHEVROLET, INC., Respondent.**

No. 74–1023.

United States Court of Appeals, Seventh Circuit.

Heard Sept. 10, 1974.

Decided Oct. 22, 1974.

Elliott Moore, Deputy Associate Gen. Counsel, Stephen D. Quinn, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Gary A. Marsack, Milwaukee, Wis., for respondent.

Before FAIRCHILD, PELL and TONE, Circuit Judges.

PER CURIAM.

This case is before the court on an application by the National Labor Relations Board for the enforcement of a cease and desist order issued by the Board against Martz Chevrolet, Inc. The Company has refused to recognize and bargain with the Union, District No. 10, International Association of Machinists and Aerospace Workers, AFL–CIO, which the Board had certified as the exclusive representative of the Company's service employees. The Board found that the Company's refusal was an unfair labor practice in violation of sections 8(a)(1) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. § 158, and ordered the Company to bargain with Union.

At issue is the validity of the ballot which proved to be the decisive vote for a consent election conducted on August 15, 1972. Altogether 26 employees voted in the election. Of the undisputed ballots, 11 were cast for the Union, and 11 against. Three ballots were challenged by the Company or the Union. One other ballot, the focus of the present case, had been declared void by the Board agent conducting the election because, in addition to an "X" marked in the box signifying a "Yes" vote for the Union, the words "Do I ever" were scrawled across the bottom of the ballot. After a hearing and the resolution of the challenges and other objections to the election, the tally stood at 12 votes for and 12 against the Union. Thus, decision on the validity of the voided ballot would determine the outcome of the election.

In his report on the investigation of the election, the Regional Director found the Board agent's invalidation to have been erroneous, so he reinstated the ballot. The Board itself concurred in the Director's ruling and certified the election. Upon the Company's refusal to accept this decision, an unfair labor practice proceeding was instituted resulting in the cease and desist order which the Board now seeks to enforce.

The Company contests the validation of the ballot on two grounds. First, it maintains that the Regional Director had no authority to consider the issue of validity because the Union did not object to the agent's action until after the expiration of the 5-day period allowed under NLRB Rule § 102.69(a) for filing all objections to the election; and that the Director's investigation and rulings therefore went beyond the scope of the properly raised objections and were unfair to the Company. Second, the Company argues that the Regional Director erred on the merits as well by holding that the questioned ballot was not an invalid "signal" ballot, which by identifying the voter broke the rule of secrecy.

██ The Company's defense to the unfair labor charge has been that the

certification was improper. In general, the court may only review a certification to determine whether the NLRB abused its discretion. *See* Macomb Pottery Co. v. N.L.R.B., 376 F.2d 450, 452 (7th Cir. 1967) and the cases cited therein. The court may refuse enforcement of an order finding the employer guilty of unwarranted refusal to bargain if: (1) the aggrieved party was not accorded a fair hearing; or (2) challenges affecting the results were erroneously decided as a matter of law. N.L.R.B. v. Joclin Mfg. Co., 314 F.2d 627, 631–632 (2d Cir. 1963).

Therefore, in charging that the Regional Director abused his discretion by extending the investigation of the election beyond the boundaries authorized by Rule § 102.69, the Company must show that this action effectively denied it the fair hearing to which it is entitled. The argument that the Union's failure to object specifically to the voiding of the ballot precluded the Regional Director from any reexamination of the matter is similar to one explicitly rejected by this court in these words:

> "The director may properly decline to consider objections of the parties that are not timely brought to his attention. But this limitation does not preclude his consideration of matters which he may choose to investigate independently, regardless of the fact they may be included in the objections." N.L.R.B. v. Realist, Inc., 328 F.2d 840, 843 (7th Cir. 1964), cert. denied, 377 U.S. 994, 84 S.Ct. 1921, 12 L.Ed.2d 1046 (1964).

In the instant case, the Company argues that the doctrine of *Realist* is only applicable to situations in which the additional matter to be investigated is in the general category described by a timely objection. For in *Realist* the Regional Director had merely expanded his investigation to include another incident of alleged employer misconduct, even though the Union had not included this specific incident among their timely objections to the employer's pre-election conduct. We do not agree that *Realist* is so limited. There the court relied on the general principle that the Board has broad discretion in setting up procedures to guarantee "the fair and free choice of bargaining representatives by employees," in finding that the Board did not unreasonably exercise its discretion.

The Board has an especially strong interest in assuring that its agents will conduct elections according to the law and the policies of the Board. In light of this interest, it was entirely proper for the Regional Director to conclude that under the circumstances he should include within the scope of his investigation the conduct of the Board's agent. He interpreted Rule § 102.69 as permitting such an action on his part. The full Board agreed. It is for the Board to regulate its own procedures and interpret its own rules, so long as it does not act unfairly or in an arbitrary and discriminatory manner. *See* N.L.R.B. v. A. J. Tower Co., 329 U.S. 324, 329–331, 67 S.Ct. 324, 91 L.Ed. 322 (1946).

In the present case, the Regional Director's investigation of the election was initiated by the written, timely filed objections of the Union and the challenges by both sides. The Union called his attention to the problem of the voiding of the ballot when it requested in a phone conversation, after the expiration of the period for filing supplemental objections, that the Regional Director look into the matter. The Company was promptly notified by phone of the request. It does not appear that the Company protested at this time that the Regional Director was not authorized to consider the issue of validity, or that it chose to argue the merits. Rather, as the respondent's brief explains, the Company simply assumed that no reevaluation of the invalidation would take place. Once the Regional Director released his report and recommendations, the Company filed excep-

tions accompanied by full briefs stating its arguments in opposition to the report and recommendations, including many of the arguments put forth here. The Board considered those arguments and overruled the exceptions. The Company thus had both adequate notice and opportunity to be heard. On this record, we find that the Board correctly decided that the Company was not deprived of its right to a fair hearing or otherwise prejudiced by the Regional Director's consideration of the void ballot issue.

■■ The Regional Director's decision on the merits of the question of the validity of the ballot was based on well-established policies of the Board. Irregular methods of marking ballots, for example, by using a check mark or blocking in the appropriate box instead of using an "X" as required by the instructions, may be a means by which a voter establishes to others that he voted a particular way, but as long as the irregularity does not inherently identify the voter and does clearly indicate his intent, such ballots are valid. Bridgeton Transit, 124 N.L.R.B. 1047, 1048 (1959). Nor is a ballot invalid because additional words have been written on it to emphasize the voter's feelings. George K. Garrett Co., 120 N.L.R.B. 484, 486 (1958), F. J. Stokes Corp., 117 N.L.R.B. 951, 954–955 (1957).

■ Under these standards, which the Board has discretion to adopt and follow, the ballot in this case was valid. The Board could properly determine that the voter merely emphasized his approval of the Union with the words written below his "X", and that unlike the situation in which a voter signs his name or initials to a ballot, these words did not inherently identify the voter.

Since the Regional Director had the authority to investigate the invalidation of the ballot, and since his decision on the merits was not erroneous as a matter of law, the Board's petition for the enforcement of its order of November 7, 1973 is hereby granted.

Application for enforcement granted.