**ROBERTS DOOR AND WINDOW COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–1835.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1976.

Decided July 23, 1976.

Stuart W. Conrad, Kansas City, Mo., for petitioner.

John C. Rother, Atty., N. L. R. B., Washington, D. C., for respondent; John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel and John D. Burgoyne, Atty., N. L. R. B., Washington, D. C., on brief.

Before HEANEY and WEBSTER, Circuit Judges, and SCHATZ, District Judge.*

SCHATZ, District Judge.

This is a petition for review and a cross-application for enforcement of an order of the National Labor Relations Board finding that Roberts Door and Window Company (hereinafter Company) had violated Section 8(a)(1) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain collectively with the Sheet Metal Workers International Association, Local Union No. 2, AFL–CIO (hereinafter Union), as the exclusive bargaining representative of the Company's employees. This court has jurisdiction under Section 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f).

The only issue raised herein is whether the Board abused its discretion in failing to count one ballot marked in an irregular way which ballot proved to be crucial to the outcome of a representative election. We

---

* The Honorable Albert G. Schatz, United States District Judge for the District ·of Nebraska, sitting by designation.

hold that there was an abuse of discretion in this instance and vacate and set aside the Board's bargaining order and deny enforcement of the same.

The facts of this case are not in dispute. On September 15, 1974, the Union filed a petition with the Board for a representation election in a unit composed of the production and maintenance employees at the Company's plant in Kansas City, Missouri. An election was scheduled and a notice of election, which included a sample ballot, was posted in the Company's plant. The election was subsequently held at the plant on December 3, 1974. The ballot in question was the standard form used in elections involving a single petitioning union.[1] The Board Agent supervising the election prefolded the ballots into one-quarter of their original size and handed one to each employee with only the blank portion thereof visible.

Fourteen ballots were cast in the election. Seven ballots were in favor of union representation; six ballots were cast against such representation. The remaining ballot, challenged in this petition, was declared void on the ground it was improperly marked. The ballot was not marked on the printed side but the word "No" was written on the blank reverse side.

We are presented with the question whether the Board should have construed this ballot as a vote against union representation. The Fourth and Fifth Circuits have decided similar cases adversely to the Board. In *N. L. R. B. v. Titche-Goettinger Co.,* 433 F.2d 1045 (5th Cir. 1970), a representation election was held wherein a total of one hundred ballots were cast, forty-nine in favor of the union, forty-six against the union, and three remaining ballots cast were voided by the Board Agent on grounds that they were improperly marked. In all material respects, the factual situation in this case is identical to the facts in the

instant case, including the fact that the ballots in *Titche-Goettinger* were folded when handed to the employees with only the blank portion thereof visible. In denying enforcement of the Board's order and remanding the case for a full factual hearing, the Court of Appeals for the Fifth Circuit stated:

> General Counsel for the Board contends that the Acting Regional Director properly determined that "the marking on the ballot on the reverse side is too radical a departure from the accepted norm in marking ballots to permit conjecture as to the voters' intent." Such a conclusion is hardly consistent with the admitted Board policy of attempting to give effect to the voters' intent whenever possible. See *Western Electric Company, Incorporated,* 97 N.L.R.B. 933; *N. L. R. B. v. Whitinsville Spinning Ring Co.,* 1 Cir., 1952, 199 F.2d 585.
>
> The three contested ballots unmistakably show an unambiguous, legible "NO," albeit its appearance on the blank side of the form. Additionally, as already indicated, 2 of the voters whose ballots were voided voluntarily submitted affidavits to the Regional Director, declaring their intention to vote against the Union. The intent to reject union representation is clear, considering that the only question asked on the ballot is, "Do you wish to be represented for purposes of collective bargaining by RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL–CIO." (Footnote omitted.) Accordingly, the 3 votes should have been recorded for the Employer.

*Id.* at 1048.

In *N. L. R. B. v. Tobacco Processors, Inc.,* 456 F.2d 248 (4th Cir., 1972), the Board voided four ballots which were blank on their face but which had the word "No" written on their back, similar to the instant case. In a brief, per curiam opinion, the

[1] The following question was printed on the face of the ballot: "Do you wish to be represented for purposes of collective bargaining by SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 2, AFL– CIO?" The ballot then instructs the voter to mark an "X" in the square of his choice. Two blank squares are provided, one beneath the word "Yes" and one beneath the word "No."

Court of Appeals for the Fourth Circuit stated:

> We decline to enforce the Board's order requiring the company to bargain with the union because we conclude that the union was improperly certified. At the election the Board excluded four ballots which were blank on their face but which had the word "no" written on their back. The ballots should have been counted since they clearly manifested the voters' intention not to be represented by the union. *NLRB v. Titche-Goettinger Co.,* 433 F.2d 1046 (5 Cir. 1970). When those ballots are counted the union lost the election.
>
> Enforcement denied.

*Id.*

We agree with the reasoning in *Tobacco Processors* and *Titche-Goettinger* and hold that the Board abused its discretion in refusing to count the ballot in question.

The invalidation of the ballot was inconsistent with the long-standing Board policy "to allow a ballot if there is a clear expression of preference, regardless of the irregularity of the mark on the ballot."[2] *Mycalex Division of Spalding Fibre Co., Inc. v. N. L. R. B.,* 481 F.2d 1044, 1045 (2d Cir. 1973). The Board has in the past counted ballots which were unconventionally marked on their face. *See, e. g., Gregg Moore Co.,* 72 LRRM 1137 (1969); *Knapp-Sherrill Co.,* 68 LRRM 1286 (1968); *Bridgeton Transit,* 44 LRRM 1580 (1959); *Pioneer Electronics Corp.,* 36 LRRM 1137 (1955). It is the Board's policy, on the other hand, to void ballots not marked on their face. *See Columbus Nursing Home, Inc.,* 76 LRRM 1417 (1971). We find no justification or logic in such a distinction.

The voter in the instant case was confronted with a single, simple question, briefly put: Do you want to be represented by the union? The "No" vote expressed a clear, unequivocal preference against union representation.[3] The ballot was free from ambiguity and readily ascertainable and clearly manifested the voter's intent. Under these circumstances, the ballot should not have been voided and should have been counted for the employer.

The Board also submits that the reverse side marking provides a means for identifying the voter and thereby violates the secrecy of the ballot. We are not so persuaded. As previously noted, the Board has counted other ballots marked in an unconventional manner. Therein the Board has ruled that such markings "do not inherently disclose the identity of the voter . . ." *Knapp-Sherrill Co., supra,* 68 LRRM at 1287. A similar approach is appropriate herein. Finally, the Board does not suggest that the "disputed (marking) was used for identification purposes * * *," *Bridgeton Transit, supra,* 44 LRRM at 1581.

We conclude that the union was improperly certified. The ballot in question should have been counted since the voter manifested a clear intent against representation by the union. Accordingly, the vote was a seven-seven tie and the union failed to receive a majority vote as required by § 9(a) of the Act.

The order of the National Labor Relations Board is set aside and vacated and the

---

2. Although the Board's policy is clearly pronounced, similar cases have yielded contradictory results. *See Caribe Industrial and Electrical Supply, Inc.,* 88 LRRM 1592 (1975); *Gifford-Hill & Co., Inc.,* 73 LRRM 1471 (1970); *Belmont Smelting and Refining Works, Inc.,* 37 LRRM 1331 (1956); *Bon Tool and Die Company,* 37 LRRM 1254 (1956).

3. Subsequent to the election, on December 6, 1974, the company filed a timely objection to the election primarily on the grounds asserted herein, with the Regional Director. Attached thereto was an affidavit of the employee who cast the ballot. The employee stated that no one instructed him to open the folded ballot, that he did not know the ballot had printing on the inside, and that his intention was to vote against the union. The Board did not consider the affidavit. *See Semi-Steel Casting Co. v. N. L. R. B.,* 160 F.2d 388 (8th Cir. 1947), *cert. denied,* 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344. We do not meet that question. Under the circumstances here, where the intent to reject union representation is clear from the ballot in question, the confirming affidavit is merely surplusage, and needs no consideration.

Board's cross-application for enforcement is denied.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. The manner in which and the regulations by which an election is to be conducted are within the competence of the Board to provide. *Semi-Steel Casting Co. v. National Labor Relations Bd.,* 160 F.2d 388, 391–392 (8th Cir.), *cert. denied,* 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344 (1947). Courts should not interfere save for the most glaring discrimination or abuse. *N. L. R. B. v. Olson Bodies, Inc.,* 420 F.2d 1187, 1189 (2nd Cir. 1970), *cert. denied,* 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237 (1971).

The Board did not abuse its discretion here. Its actions were completely consistent with the principles of majority rule, secrecy of the ballot and fairness. The Board has, since 1951, uniformly refused to count ballots not marked on their face. *Western Electric Company, Inc.,* 97 NLRB 933, 934, 29 LRRM 1187 (1951). It has done so whether the markings on the reverse side of the ballot appeared to favor the employer or the Union.

The Board's reasons for adopting this practice are sound. Such ballots raise doubts "whether [the voter] was even aware of the instructions, or indeed, of the choices set forth on the face of the ballot;" they "create the possibility that the voter intended to insure that one of the parties to the election finds out how he voted;" and they make for greater difficulties in counting the ballots and for more challenges. *Columbus Nursing Home, Inc.,* 188 NLRB 825, 76 LRRM 1417, 1418 (1971).

There are two additional reasons for not counting such ballots that were not mentioned by the Board. The first is certainty. Employees, under current Board policy can be told plainly that no ballots marked on the reverse side will be counted. Under our decision today, such an instruction cannot be given. The second is that a rule giving the Board discretion to count such ballots inevitably operates to the disadvantage of the employees favoring Union representation. If the Board rules that a ballot marked on the reverse side should be counted against the Union, there is no effective way under existing precedents that the Union can obtain meaningful court review. The employer, however, can have court review of a decision to count a ballot for the Union by refusing to bargain.