NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WRAPE FOREST INDUSTRIES,
INC., Respondent.

No. 78–1252.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 22, 1978.

Decided April 24, 1979.

Michael S. Winer and Norman A. Moscowitz, Attys., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief, for petitioner.

Charles W. Reynolds and Gaines H. Houston, Little Rock, Ark., on brief, for respondent.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges, En Banc.

GIBSON, Chief Judge.

This case was originally submitted to a panel of this court. The panel questioned the continuing validity of a prior decision of this court, *Roberts Door and Window Co. v. NLRB*, 540 F.2d 350 (8th Cir. 1976), and requested that the case be submitted to the court en banc. The court en banc accepted the case and proceeded to consider the issue on briefs without further oral argument. A majority of the court is of the opinion that the *Roberts Door* decision has continuing vitality and reaffirms the principles stated therein.

The National Labor Relations Board has applied for enforcement of its order against Wrape Forest Industries, Inc. issued on February 21, 1978. The Board found that Wrape Forest had committed an unfair labor practice by refusing to recognize and bargain with the United Furniture Workers of America, AFL–CIO. The Board had certified that union as the exclusive representative of Wrape Forest employees following a representation election at which the Board found that eighty-five votes were properly cast in favor of union representation and eighty-three votes were properly cast against the proposition. The company admits that it refused to bargain with the union. However, it contends that the Board's certification of the union is invalid due to the refusal of the Board to count three contested ballots. After carefully considering the briefs of the parties and the record, we deny enforcement of the Board's order.

Since the union won the election by a two-vote margin, the vote would be tied and the company would not be required to recognize and bargain with the union if two of the contested "No" votes were now counted. *See* 29 U.S.C. § 159(a). The first challenged ballot was marked with an "x" in the "No" square, but contained the first and last name of an eligible voter written on either side of the square containing the "x". The second challenged ballot had "No" written in the "Yes" square on the face of the ballot. The third was marked "No" on the blank reverse side of the ballot and was not marked on the printed side.

The Board refused to count the ballot containing the name of an eligible voter. This refusal was pursuant to the Board's apparently consistent policy of refusing to consider ballots that contain evidence of voter identification or an attempt at voter identification. In the Board's view, voter identification on the ballot would permit undue pressure to be exerted on employees. The Board urges that any attempt by a voter to identify himself on the ballot gives rise to an implication that the employee is complying with threats or inducements of one of the parties to the election. The Board's ruling appears of dubious validity in disenfranchising eligible voters, as the voter's name need not be disclosed by the Board to either of the parties. However, it is unnecessary for us to decide whether any ballot with the name of a voter written on it should be excluded because in the present case the remaining two ballots should have been counted under our decision in *Roberts Door and Window Co. v. NLRB*, 540 F.2d 350 (8th Cir. 1976).

In *Roberts Door* we held that a ballot which was unmarked on the printed side but had the word "No" written on the blank reverse side should have been counted as a "No" vote. Today, we reaffirm our holding in *Roberts Door* as giving effect to the only voter intention reasonably to be divined from the situation. The fact that a voter misunderstands the instructions for marking his ballot due to poor reading skills or the excitement of the situation does not justify disenfranchising that voter. The Fourth and Fifth Circuits have held that a vote against union representation must be counted where a ballot is marked with the word "No" on the reverse side of the printed ballot. *NLRB v. Tobacco Processors, Inc.*, 456 F.2d 248 (4th Cir. 1972); *NLRB v. Titche-Goettinger Co.*, 433 F.2d 1045 (5th Cir. 1970). The Second Circuit has held that a ballot with the word "No" written on the "Yes" side of the ballot should be counted as a "No" vote. *Mycalex Division of Spaulding Fibre Co., Inc. v. NLRB*, 481 F.2d 1044, (2d Cir. 1973).

The Board's policy has been to allow a ballot if there is a clear expression of preference, regardless of the irregularity of the mark on the ballot. *Knapp-Sherrill Co.,* 171 N.L.R.B. 1547 (1968). This policy has been consistently upheld by the courts as noted in the above citations. Also, as a matter of fairness in carrying out the Board's function to allow the workers a free and unfettered choice in employee representation, the Board should make every effort to give effect to the voters' intent. For the democratic processes to work to maximum efficiency each eligible employee should be allowed to vote and should have his vote counted if its meaning can reasonably be ascertained. This the Board has not done in this case. The voters' intentions here are clearly expressed and there appears to be no cogent reason why the unambiguous intent of the voters should not be honored.

In keeping with this authority and our prior decision in *Roberts Door,* we hold that the National Labor Relations Board erred in refusing to count as "No" votes the ballots with the word "No" written on the reverse side or in the "Yes" square of the ballot. With the addition of these "No" votes, the vote in the union representation election was tied, and Wrape Forest did not commit an unfair labor practice by refusing to recognize and bargain with the United Furniture Workers of America, AFL–CIO.

Enforcement of the order of the National Labor Relations Board is denied.

LAY, Circuit Judge, dissenting, in which HEANEY, Circuit Judge, joins.

We respectfully dissent. Although the issue is narrow, a plenary statement of facts is warranted.

Wrape Forest Industries, Inc. of Little Rock, Arkansas (Company) refused to recognize and bargain with the United Furniture Workers of America, AFL–CIO (Union), which the National Labor Relations Board had certified as the exclusive bargaining representative of the Company's employees following a Board election. The Board found by such refusal that the Company had violated §§ 8(a)(1) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 158(a)(1) and (5).

On August 3, 1977, a representation election was conducted at the Company. One hundred seventy-four employees voted in the election. The tally of ballots showed that 84 votes were cast for representation by the Union and 79 votes were cast against, with several ballots either challenged or declared void. The Company filed objections to the election. After an investigation the Board's Regional Director overruled the objections. A revised count of ballots showed 85 votes for representation by the Union and 83 votes against. The Company's objections to the revised count were overruled and the Union was certified as the employees' bargaining representative. The Company then filed a timely request for review with the Board specifically relating to three irregularly marked ballots which were declared void. The Board denied the request for review.

Thereafter the Company refused to bargain with the Union, whereupon the Regional Director issued a complaint alleging that the Company refused to bargain in violation of the National Labor Relations Act. In its answer the Company admitted its refusal to bargain with the Union but contested the validity of the Board's certification of the Union as its employees' bargaining representative. Upon a motion for summary judgment filed directly with the Board by the general counsel, the Board issued its decision granting the motion, finding that the Company had committed unfair labor practices in refusing to bargain with the Union. This application by the Board for enforcement of its order followed.

At issue is the validity of the three irregularly marked ballots declared void:

(1) The first void ballot was marked with an "X" in the "No" square, but contained the first and last name of an eligible voter written on either side of the square containing the "X".

(2) The second void ballot had "No" written in the "Yes" block on the face of the ballot.

(3) The third was marked "No" on the blank reverse side of the ballot; it was not marked on the printed side.

The Board concedes that the ballot marked "No" on the blank reverse side of the ballot is identical to the irregular ballot involved in *Roberts Door & Window Co. v. NLRB*, 540 F.2d 350 (8th Cir. 1976). By a 2–1 vote this court ruled that the Board had abused its discretion in voiding an identically marked ballot. The Board urges, however, that we need not count this ballot since the other two ballots are clearly irregular and invalid.

We find no abuse of discretion in the Board's invalidating the ballot containing the name of an eligible voter. The cases are uniform rejecting any ballot which contains markings that might identify the voter. *NLRB v. Ideal Laundry & Dry Cleaning Co.*, 330 F.2d 712, 718 (10th Cir. 1964); *NLRB v. National Truck Rental Co.*, 99 U.S.App.D.C. 259, 263, 239 F.2d 422, 426 (1956), *cert. denied*, 352 U.S. 1016, 77 S.Ct. 561, 1 L.Ed.2d 547 (1957); *Semi-Steel Casting Co. v. NLRB*, 160 F.2d 388, 392 (8th Cir.), *cert. denied*, 332 U.S. 758, 68 S.Ct. 59, 92 L.Ed. 344 (1947).

We think that the ballot which had "No" written on the "Yes" block on the face side of the printed ballot is no more irregular than the one marked "No" on the blank reverse side and that these two ballots must rise or fall together. We are further satisfied that if *Roberts Door* was properly decided, the Board's order must be reversed here for a swing of two votes would result in the Union failing to receive a majority vote as required by § 9(a) of the Act, 29 U.S.C. § 159(a). Contrary to the majority opinion, however, we think *Roberts Door* was improperly decided.

It is clear that Congress has entrusted the Board with broad discretion in conducting representation elections. *NLRB v. A. J.*

*Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); *NLRB v. Waterman Steamship Corp.*, 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940). As the Supreme Court early observed:

> As we have noted before, Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees. * * * Section 9(c) of the Act [29 U.S.C. § 159(c)] authorizes the Board to "take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives." In carrying out this task, of course, the Board must act so as to give effect to the principle of majority rule set forth in § 9(a) [29 U.S.C. § 159(a)], a rule that "is sanctioned by our governmental practices, by business procedure, and by the whole philosophy of democratic institutions." S. Rep. No. 573, 74th Cong., 1st Sess., p. 13. It is within this democratic framework that the Board must adopt policies and promulgate rules and regulations in order that employees' votes may be recorded accurately, efficiently and speedily.

*NLRB v. A. J. Tower Co., supra*, 329 U.S. at 330–31, 67 S.Ct. at 328.[1]

As recently stated by the Supreme Court in *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978), *quoting NLRB v. Truck Drivers Local 449*, 353 U.S. 87, 96, 77 S.Ct. 643, 648, 1 L.Ed.2d 676 (1957):

> [B]alancing . . . conflicting legitimate interests . . . to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review.

---

1. This court has adhered to this principle. In *Semi-Steel Casting Co. v. NLRB*, 160 F.2d 388, 391–92 (8th Cir.), *cert. denied*, 332 U.S. 758, 68 S.Ct. 59, 92 L.Ed. 344 (1947), we observed:

   Since the section of the Act authorizing an election is silent as to procedure, the manner in which an election is to be conducted and the rules and regulations for the conduct of the election and necessary to assure finality in the result of the election are within the competence of the Board to provide, subject to the principles of majority rule and secrecy of the ballot which the Act enjoins.

Accordingly the scope of judicial review as to the propriety of representation elections is limited. In matters relating to election proceedings a court will set aside the Board's determination only if it has acted arbitrarily and abused its discretion. *NLRB v. Hardy–Herpolsheimer Division of Allied Stores, Inc.,* 453 F.2d 877, 878 (6th Cir. 1972). *Cf. Wilkinson Manufacturing Co. v. NLRB,* 456 F.2d 298 (8th Cir. 1972). As the Second Circuit has stated, "The conduct of representation elections is the very archetype of a purely administrative function, with no *quasi* about it, concerning which courts should not interfere save for the most glaring discrimination or abuse." *NLRB v. Olson Bodies, Inc.,* 420 F.2d 1187, 1189 (2d Cir. 1970), *cert. denied,* 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237 (1971).

We cannot say that the Board's reasons for rejecting ballots such as those in the instant case represent such "glaring discrimination or abuse" so as to warrant substituting our judgment for that of the Board. The Board has evolved a policy through decisions in particular cases to count ballots which are irregularly marked whenever the intent of the voter is clearly apparent, provided the mode of designation does not reveal the voter's identity. *NLRB v. Sauk Valley Manufacturing Co.,* 486 F.2d 1127, 1133 (9th Cir. 1973). As a general rule the Board has counted ballots irregularly marked on their face in situations where the mismarkings appear to be due to inadvertence, indecision or an intent to give greater emphasis to the voter's choice and thus are not likely to be attempts at identification. *See, e. g., NLRB v. Martz Chevrolet, Inc.,* 505 F.2d 968, 971 (7th Cir. 1974). Where the mismarkings are clearly inappropriate for the section of the ballot on which it appears, such as where they appear on the back or where there are clear markings on both sides of a ballot, the Board will void those ballots rather than speculate on what the voter intended. *See, e. g., Columbus Nursing Home, Inc.,* 188 NLRB 825, 76 LRRM 1417 (1971). Contrary to the holding in *Roberts Door,* we think the Board's application of its long standing policy to the ballots in question was not an abuse of its discretion.

Clearly the ballot with the word "No" written in the "Yes" block is too ambiguous to reveal the voter's intent, for the ballot contains characteristics of both a "Yes" and a "No" ballot. This court upheld the Board's exercise of its discretion in refusing to count a ballot in a similar situation and we see no reason to reach a different conclusion here. *See Semi-Steel Casting Co. v. NLRB,* 160 F.2d 388, 392 (8th Cir.), *cert. denied,* 332 U.S. 758, 68 S.Ct. 59, 92 L.Ed. 344 (1947).

Contrary to the decision in *Roberts Door* we likewise find no abuse of the Board's discretion in voiding the ballot marked "No" on the blank reverse side. As Judge Heaney noted in dissent in *Roberts Door,* the Board's actions are completely consistent with the principles of majority rule, secrecy of ballot and fairness:

> The Board's reasons for adopting this practice are sound. Such ballots raise doubts "whether [the voter] was even aware of the instructions, or indeed, of the choices set forth on the face of the ballot;" they "create the possibility that the voter intended to insure that one of the parties to the election finds out how he voted;" and they make for greater difficulties in counting the ballots and for more challenges. *Columbus Nursing Home, Inc.,* 188 NLRB 825, 76 LRRM 1417, 1418 (1971).

540 F.2d at 353.

The majority decision in *Roberts Door* was based on the concern that invalidation of the ballot was "inconsistent with the longstanding Board policy 'to allow a ballot if there is a clear expression of preference, regardless of the irregularity of the mark on the ballot.'" 540 F.2d at 352. We think this ruling, reaffirmed in the majority opinion, unduly interferes with the Board's administrative discretion in regulating representation elections. It hardly behooves any federal court to substitute its judgment as to the regularity of such elections. Each ballot contains explicit instructions which state "Mark an 'X' in the square of your

choice." Failure to do so violates this directive. Disagreement by the courts on an ad hoc basis denigrates the Board's competence to adopt policies to effectuate its overriding interest in conducting elections with certainty and fairness.

Although courts of appeals are not to serve as "rubber stamps" for Board decisions, nonetheless we should recognize that Congress has provided us with a limited power of review when certification of an election has been made. The Board is given the responsibility to set up and implement rules and regulations for the conduct of these elections. Congress in giving the Board this power would find it startling that rules which promote certainty and fairness, which are applied to union and management alike, may be diluted by subjective disagreement of individual judges. We find a rational basis for the Board's determination that the two ballots should be set aside and accordingly we are precluded from further review. *See NLRB v. A. J. Tower Co., supra.* The decision of *Roberts Door* should be overruled.