**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MANHATTAN CORPORATION, Manhattan Guest House, Inc., Respondent.**

No. 79–2983.

United States Court of Appeals, Fifth Circuit.

June 23, 1980.

Elliott Moore, Deputy Associate Gen. Counsel, Lawrence E. Blatnik, Atty., Washington, D. C., for petitioner.

Robert W. Daigle, Lafayette, La., for respondent.

Before TUTTLE, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

This case is before us on the application of the National Labor Relations Board (the Board) for enforcement of its order that Respondent, the Manhattan Corporation, Manhattan Guest House, Inc., (the Home), cease and desist from refusing to bargain collectively with the Service Employees International Union, Local No. 275, AFL-CIO (the Union).

On June 23, 1978, a representation election was held on the Home's premises. Ballots were cast by 93 of the approximately 106 eligible voters. Of the 93 ballots cast, 43 were votes for representation by the Union; 42 were votes against representation; 5 were challenged ballots; and 3 were declared void by the Board. The challenges to the five ballots have been sustained at an earlier stage in these proceedings, and those challenges are not before us on appeal. The only issue on appeal is the validity of the three voided ballots.

The Home contends that all three voided ballots clearly express the intent to vote against representation by the Union. Because the margin of the Union's victory was one, if any one of the voided ballots is counted as a vote against representation, the Union failed to receive a majority of the votes cast, and enforcement of the Board's bargaining order must be denied.

All three of the voided ballots were marked only on the back of the ballot. On the face of the ballot appears the question:

Do you wish to be represented for purposes of collective bargaining by
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 275, AFL-CIO?

Below the question there is a square under the word "YES" on the left side of the ballot, and one under the word "NO" on the right side of the ballot. The ballot directs the voter to "MARK AN 'X' IN THE SQUARE OF YOUR CHOICE."

The voters casting two of the voided ballots marked their respective X's on the back of their ballots. The X's appear on the "NO" side of the ballots. The third voided ballot contains only the word "No" written on the back of the ballot. We hold that the ballot with the word "No" written on the back should not have been voided, but should have been counted as a vote against representation by the Union. Because that ballot is enough to affect the outcome of the election, we do not consider whether the Board properly voided the other two ballots.

In *NLRB v. Titche-Goettinger Co.*, 433 F.2d 1045 (5th Cir. 1970), we held that ballots containing no markings on their faces, but only the word "No" on their backs, were not void, but should be counted as votes against representation. The ballots at issue in *Titche-Goettinger* were apparently identical to the ones at issue here. Like this election, the *Titche-Goettinger* election involved only one union, and thus the ballots presented a simple yes-or-no choice. In *Titche-Goettinger* we said:

General Counsel for the Board contends that the Acting Regional Director properly determined that "the marking on the ballot on the reverse side is too radical a departure from the accepted norm in marking ballots to permit conjecture as to the voters' intent." Such a conclusion is hardly consistent with the admitted Board policy of attempting to give effect to the voters' intent whenever possible. See *Western Electric Company, Incorporated*, 97 N.L.R.B. 933; *N. L. R. B. v. Whitinsville Spinning Ring Co.*, 1 Cir. 1952, 199 F.2d 585.

The three contested ballots unmistakably show an unambiguous, legible "NO," albeit its appearance on the blank side of the form. Additionally, as already indicated, 2 of the voters whose ballots were voided voluntarily submitted affidavits to the Regional Director, declaring their intention to vote against the Union. The intent to reject union representation is clear, considering that the only question asked on the ballot is, "Do you wish to be represented for purposes of collective bargaining by RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL-CIO." Accordingly, the 3 votes

should have been recorded for the Employer.

433 F.2d at 1048. We are bound by *Titche-Goettinger* to deny enforcement.

We note that two other circuits apply the rule to which we adhere today. See *NLRB v. Wrape Forest Indus.*, 596 F.2d 817 (8th Cir. 1979); *Roberts Door & Window Co. v. NLRB*, 540 F.2d 350 (8th Cir. 1976); *NLRB v. Tobacco Processors, Inc.*, 456 F.2d 248 (4th Cir. 1972) (citing *Titche-Goettinger*).

ENFORCEMENT DENIED.

TATE, Circuit Judge, concurring:

Under compulsion of our decision in *National Labor Relations Board v. Titche-Goettinger*, 433 F.2d 1045 (5th Cir. 1970), I concur in our panel holding that the Board may not disallow a ballot on which no choice was marked on the ballot itself, but in which a "No" was marked on the *back* of the paper ballot. The decision so held, on the ground that such disallowance "is hardly consistent with the admitted Board policy of attempting to give effect to the voters' intent whenever possible." 433 F.2d 1048.

For the benefit of possible en banc consideration, I must strongly disagree with this judicial interpretation of Board policy and with our arbitrary judicial substitution of judgment as to the Board's manner of conducting elections and counting paper ballots.

In the first place, the Board's policy in not invalidating ballots because of irregular markings on the face of the ballot (a "Si" instead of a "Yes", for instance) in the space where the vote is supposed to be recorded,[1] in an effort of giving effect to the unambiguous intent of the voter, is *not* inconsistent with the admitted and invariable Board policy of refusing to count ballots on which only some mark on the back is reflected. Quite different pragmatic and philosophical values justify the latter policy of the Board. America's long experience with the use of paper ballots in state elections indicates the value of simple and sometimes somewhat arbitrary rules as to what is and what is not a valid ballot. Too great flexibility in these requirements leads to applications as variable as the different commissioners at the different elections, as well as to election disputes following every close election.

Further, we know from this experience that the intended value of secrecy of the ballot may be greatly damaged if unique or aberrational markings are permissible for a valid ballot. With regard to the present case, for instance, a voter doubted by the side to which he had indicated his vote (who may indeed have intended to vote contrary to his indication) could be asked in advance of the election to demonstrate his loyalty to

---

1. Quoting from the Board's brief:

Thus, it is the Board's policy to count ballots which are irregularly marked "whenever the intent of the voter [is] clearly apparent" so long as "the ballot is not marked in such a way as to give evidence of voter identification or an attempt at voter identification." *N. L. R. B. v. Whitinsville Spinning Ring Co.*, supra, 199 F.2d at 587 and 588; *N. L. R. B. v. Sauk Valley Manufacturing Co.*, 486 F.2d 1127, 1133 (9th Cir. 1973); *Columbus Nursing Home, Inc.*, 188 NLRB 825, 826 (1971). For instance, the Board has counted ballots where the voter, instead of using the conventional "X," has indicated his choice by using such marks as a check mark or a series of pen lines, or words which either alone or in conjunction with other markings on the ballot written in or around the appropriate ballot square, clearly indicate what the voter meant. [See, *Gregg Moore Co.*, 178 NLRB 483, 484 (1969); *Knapp Sherill Co.*, 171 NLRB 1547, 1548 (1968); *Bridgeton Transit Co.*, 124 NLRB 1047, 1048 (1959).] The Board also will count ballots on which there are markings for more than one choice but on which an attempt has clearly been made to eradicate the markings for all choices but one. [*J. L. P. Vending Co., Inc.*, 218 NLRB 794, 795 (1975); *Gifford-Hill & Co., Inc.*, 181 NLRB 729 (1970); *N. L. R. B. v. Schapiro and Whitehouse, Inc.*, 356 F.2d 675, 677–678 (4th Cir. 1966).] In such situations, the voter's intent is free from ambiguity and the irregular markings appear to be due to inadvertence, indecision, or an intent to give greater emphasis to the voter's choice, and thus, are not likely to be attempts at identification. See, *George K. Garrett Co.*, 120 NLRB 484, 486 (1958); *N. L. R. B. v. Martz Chevrolet, Inc.*, 505 F.2d 968, 971 (7th Cir. 1974).

employer or union by marking "No" or "Yes" on the back of the folded (and intended to be secret) ballot—thus permitting verification by the promisee of the voter's promise, coerced or not, either by observation at the time of casting the ballot or else upon the count itself.

Quite proper concerns in the proper administration of an election—hardly inconsistent with counting as valid an irregular marking on the face of the ballot—justify a fixed and impartial rule that no markings on the back of the folded ballot can count as a valid vote. One might, of course, say it is not an unreasonable rule that henceforth commissioners must look at both front and back of a ballot (but what if there are markings on both front and back, the latter possibly added by a stranger to spoil the ballot?).

However, I certainly cannot hold that the Board is unreasonable or arbitrary in requiring that a ballot be marked on its face, in the space intended for voting, rather than on its folded back—a requirement, I am almost certain, that has applied in almost all American jurisdictions in which paper ballots have been used since the founding of our Republic. The Board's concerns for facile and fair administration of an election count should not be at judicial whim discarded as arbitrary or unreasonable; nor the Board's concern with possible further litigable issues that may thus arise by the judicially mandated flexibility in casting valid ballots.[2]

In *Roberts Door and Window Company v. N. L. R. B.*, 540 F.2d 350 (1976), the Eighth Circuit followed our *Titche-Goettinger* rationale. The dissenting judge expressed what I believe to be the more sound view:

* * * The manner in which and the regulations by which an election is to be conducted are within the competence of the Board to provide. *Semi-Steel Casting Co. v. National Labor Relations Bd.*, 160 F.2d 388, 391–392 (8th Cir.), *cert. denied*, 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344 (1947). Courts should not interfere save for the most glaring discrimination or abuse. *N. L. R. B. v. Olson Bodies, Inc.*, 420 F.2d 1187, 1189 (2nd Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237 (1971).

The Board did not abuse its discretion here. Its actions were completely consistent with the principles of majority rule, secrecy of the ballot and fairness. The Board has, since 1951, uniformly refused to count ballots not marked on their face. *Western Electric Company, Inc.*, 97 NLRB 933, 934, 29 LRRM 1187 (1951). It has done so whether the markings on the reverse side of the ballot appeared to favor the employer or the Union.

The Board's reasons for adopting this practice are sound. Such ballots raise doubts "whether [the voter] was even aware of the instructions, or indeed, of the choices set forth on the face of the ballot;" they "create the possibility that the voter intended to insure that one of the parties to the election finds out how he voted;" and they make for greater difficulties in counting the ballots and for more challenges. *Columbus Nursing Home, Inc.*, 188 NLRB 825, 76 LRRM 1417, 1418 (1971). * * *

---

2. For example, there may be markings on the back of a folded blank ballot, such as "O. K.", "right on", "the union is good", "the company is good". Should the (alleged) voter who made this marking be permitted to explain later that he intended by this to vote "Yes" or "No" (or, rather, to place his "X" in the "Yes" or "No" space) on the ballot itself?