NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CONSOLIDATED LIBERTY, INC., d/b/a
Hy-Lond Convalescent Hospital,
Respondent.

No. 80–7376.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1981.

Decided March 26, 1982.

Ralph C. Simpson, N. L. R. B., Washington, D. C., argued, for petitioner; Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief.

David S. Durham, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for respondent.

Before KENNEDY and ALARCON, Circuit Judges and BELLONI *, District Judge.

ALARCON, Circuit Judge:

This case arises on the request of the National Labor Relations Board (Board) for enforcement of its April, 1980 order, requiring that Consolidated Liberty (Consolidated) cease and desist from refusing to bargain with the Union, and from "interfering with, restraining, or coercing employees in the exercise of" their section 7 rights. That order also required Consolidated to bargain with the Union on request, to embody any agreement in a signed contract, and to post

* Hon. Robert C. Belloni, United States District Judge for the District of Oregon, sitting by designation.

appropriate notices. For the reasons set forth below, we deny enforcement and remand for proceedings not inconsistent with this opinion.

## FACTS

Consolidated operates a convalescent hospital in Sacramento, California. In May, 1979, a consent election was conducted by the Board for certain employee units of the hospital to determine whether those employee units were to be represented by the Service Employees International Union Local 22, SEIU, AFL-CIO (Union). The ballot tally indicated 32 votes for and 29 votes against the Union, with four void and four challenged ballots. Subsequently, the Board issued a corrected tally indicating three, not four, void ballots.[1]

Pursuant to the accepted administrative regulations Consolidated filed objections to the conduct of the election, and supported these objections with declarations and documentary evidence. In June, 1979, the Regional Director of the Board, after an ex parte administrative investigation, issued a report recommending that all of the objections be overruled. She did not order a hearing on any objection, and did not forward the record resulting from her investigation to the Board.

Consolidated filed exceptions to the Regional Director's report with the Board, and forwarded to the Board most of the evidence it supplied to the Regional Director. Consolidated requested that the Board overrule the Regional Director's report and set aside the election or, in the alternative, hold hearings on its objections. Consolidated also excepted to the Regional Director's failure to hold a hearing on its objections and to transmit the record from below to the Board.

In September, 1979, the Board, in its Decision and Certification of Representation, denied Consolidated's exceptions and certified the Union as collective bargaining agent for the employees. The Board did not conduct a hearing on Consolidated's exceptions.

To obtain review by this court of the certification, Consolidated refused to bargain with the Union. In December, 1979, the Union filed an unfair labor practice charge and in January, 1980, the Regional Director issued a complaint and Notice of Hearing against Consolidated alleging that Consolidated violated 8(a)(1) and (5) of the National Labor Relations Act (NLRA) by refusing to bargain. While admitting its refusal to bargain, Consolidated defended on grounds that the representation election and Board certification were faulty. On a motion for summary judgment, the Board found Consolidated in violation of 8(a)(1) and (5) of the NLRA and issued the cease and desist order for which the Board seeks enforcement.

## ANALYSIS

In urging this court to deny enforcement, Consolidated challenges the election on numerous grounds, both procedural and substantive.

### 1. Procedural

■ Consolidated claims that the Board's petition for enforcement must be denied because the Regional Director failed to transmit to the Board the record she compiled in her ex parte investigation of the election. Consolidated contends that the Board's rules and regulations require that the Regional Director submit this material. We agree.

The regulations, specifically 29 CFR § 102.69, set forth the procedure to be followed in challenging a representation election. That section provides that a party challenging an election can make objections about the election conduct to the Regional Director, and submit evidence in support of those objections. The Regional Director then is required to conduct an ex parte investigation on the objections, and is permitted, in certain cases, to overrule the objections without a hearing. If this oc-

---

1. Challenges by Consolidated to three ballots were sustained. The challenge to the fourth ballot was overruled, but because the Regional Director determined that the one ballot could not affect the election results, that ballot remains unopened.

curs, the objecting party then files exceptions with the Board, and the Board can set aside the election, order a hearing or accept the director's report.

The regulations do not clearly set forth whether the Regional Director, in submitting his or her report to the Board, is obligated to attach his or her record compiled in the investigation into that report.[2] The Board has interpreted the regulations to require that the Regional Director transmit the entire record only in cases in which a hearing was held. *NLRB v. Klingler Electric Corp.*, 656 F.2d 76, 81 (5th Cir. 1981); *NLRB v. North Electric Co., Plant No. 10*, 644 F.2d 580, 582 (6th Cir. 1981). Section 102.69(g) provides that, in cases in which no hearing is held, the objecting party may submit copies of documents to the Board that were submitted to the Regional Director. The Board's position is that, if the Regional Director were required to transmit the record in all cases, this provision would be meaningless. Further, the Board contends that it need not review the evidence considered by the Regional Director, and that it may confine its review to the Regional Director's report and the briefs submitted by the parties. *North Electric*, 644 F.2d at 583.

The Board's interpretation was rejected by the Fifth Circuit in *Klingler, supra*, and by the Sixth Circuit in *North Electric, supra*. These courts held that the Regional Director must forward to the Board all evidence upon which he or she relies, whether or not a hearing is held. The courts concluded that the Board's position that it does not have to review the documentary evidence is an abdication of its responsibilities under the National Labor Relations Act. If the Board does not look at the evidence, it can do nothing but rubber stamp the Regional Director's decision, and this could raise serious due process problems. *Klingler*, 656 F.2d at 84; *North Electric*, 644 F.2d at 583.

Our decision in *NLRB v. Belcor, Inc.*, 652 F.2d 856, 858 (9th Cir. 1981), concerned the duty of the Regional Director to forward all relevant evidence to the Board. In *Belcor*, we upheld the Board's decision to overrule the employer's election objections, after finding that any error resulting from the Regional Director's failure to forward evidence upon which he relied was harmless error. The employer supplied the evidence to the Board, so that all relevant information was before it. Here, however, the Board did not see the contested ballots, which the Regional Director failed to forward. Thus, the Board was not able to review the Regional Director's decision as required by law. We therefore remand to the Board for further proceedings at which it must consider all relevant evidence which was before the Regional Director.[3]

**2.** The Regulation in effect until September 14, 1981, provided:

(g) The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made as described in § 102.68, shall constitute the record in the case. Materials other than those set out above shall not be a part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision. Immediately upon issuance of a report on objections or challenges, or both, upon issuance by the regional director of an order transferring the case to the Board, or upon issuance of an order granting a request for review by the Board, the regional director shall transmit the record to the Board.
29 CFR § 102.69(g).

**3.** On September 14, 1981, the NLRB confirmed the holdings of *Klingler* and *North Electric* by amending 29 C.F.R. § 102.69(g) to expressly provide that the Regional Director has an obligation to forward to the Board most of the material compiled by investigation. See 46 Fed.Reg. 45922–24, (Sept. 15, 1981) (to be codified in 29 C.F.R. § 102.69).

## 2. *Substantive*

On remand, the Board will direct that the Regional Director's report be sent to the Board and it will then reconsider Consolidated's substantive contentions. We note, however, that the amended regulation does not change the standard used by the Board in determining whether a party is entitled to a hearing on a specific contention. The challenging party still must show, through exceptions, that there are "substantial and material factual issues" before a hearing on any objection will be ordered. 29 CFR § 102.69(f).

Although we find it preferable to remand to the Board the bulk of Consolidated's contentions in light of the revised regulations, we believe it would further the interests of justice to examine one of Consolidated's contentions on the basis of the record before us. With reference to this contention, we do not believe that the Regional Director's record will have any effect on our analysis. This contention concerns two ballots which were voided.

Consolidated contends that the Regional Director and the Board erred in counting as void two ballots that were blank on their front side, but marked on the back "no" and "no union". Consolidated claims that these ballots clearly indicate the voters' intent to register a "no" vote, and the failure to count these ballots is arbitrary, capricious, and clearly contrary to the Board's policy requiring a ballot to be counted if there is a clear expression of preference. If these two void ballots are counted against the Union, the tally would be 32 for and 31 against the Union, and the "unopened challenged" ballot would then be determinative.[4]

The rule of this Circuit is that in representation elections, if the voter's intent is clearly manifested, the ballot is to be counted, even if the voter has not followed the designated procedure. The exception to this rule is that if the mode of designation will reveal the voter's identity, the vote will not be counted. *NLRB v. Metro-Truck Body, Inc.*, 613 F.2d 746, 749 (9th Cir. 1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980).

The first inquiry, then, is whether these two ballots clearly manifested the voter's intent. The ballot posed this question: "Do you wish to be represented for purposes of collective bargaining by—SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 22, §§ iv, AFL–CIO." The sample ballot, distributed before the election, informed voters of the question to be contained in the official ballot. The "no" and "no union" handwritten on the backs of these two ballots expressed a clear, unequivocal preference against union representation. Thus, we hold that unless this mode of designation is found to reveal voters' identities, these void ballots should have been counted.

In so holding, we note we are acting consistently with the other circuits that have addressed this issue. *See NLRB v. Manhattan Corp.*, 620 F.2d 53, 54–55 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 3050, 69 L.Ed.2d 419 (1981); *NLRB v. Wrape Forest Indus., Inc.*, 596 F.2d 817, 818–19 (8th Cir. 1979) (*en banc*); *NLRB v. Tobacco Processors, Inc.*, 456 F.2d 248 (4th Cir. 1972).[5]

---

**4.** To prevail in a representation election, the union must receive a majority of the valid ballots cast. *See* 29 U.S.C. § 159(a). If the unopened ballot is a "no" ballot, the total will be 32 to 32, and the union will have failed to get the necessary majority.

**5.** We recognize that the NLRB invariably voids ballots marked only on the back side, but we are not persuaded by their reasoning. *See Staco, Inc.*, 234 NLRB 593 (1978). The Board claims that conclusions about a voter's intention based on markings on the back of the ballot must be entirely speculative. We disa-

gree. Ballots will only be counted if they express a clear, unequivocal preference. In this case, for the reasons expressed in the body of the opinion, such a clear preference is expressed. The Board also claims that counting these ballots creates the possibility that the secrecy of the election is infringed. *See Columbus Nursing Home, Inc.*, 188 NLRB 825, 826 (1971). If there is a question of infringement on secrecy, it is up to the Board to hold a hearing to determine whether there is actual interference with secrecy. Finally, the Board in *Staco*, quoting the dissent in *Roberts Door &*

■ Furthermore, we hold that this "mode of designation" does not invariably reveal the voter's identity. Any non-traditional markings can reveal a voter's identity. We, however, do not believe that a non-traditional marking should invariably require invalidating a ballot. Absent any evidence that the ballot was marked in a non-traditional mode to insure that one party found out how a voter voted, the ballot should be counted. If there is a question of whether such a marking was used to intrude on the secrecy of voting, then the Regional Director or the Board can conduct investigations and hearings to determine whether there was any interference with the election. Absent such evidence of wrongdoing, however, we will not assume that wrongdoing occurred.

Because, however, the Regional Director and the Board voided these ballots apparently without an inquiry to determine whether they were marked so as to destroy the secrecy of the election, we remand this issue to the Board so they can determine whether there is any evidence of wrongdoing.[6]

The Board's petition to enforce its order is DENIED and the case is REMANDED for proceedings not inconsistent with this Opinion.

---

*Window Co. v. NLRB*, 540 F.2d 350, 353 (8th Cir. 1976), noted that "[i]f the Board rules that a ballot marked on the reverse side should be counted against the Union, there is no effective way under existing precedents that the Union can obtain meaningful court review. The employer, however, can have court review of a decision to count a ballot for the Union by refusing to bargain." *Staco*, 234 NLRB at 593. We recognize the inequity in the procedure that does not allow the union an opportunity for court review of an adverse decision in a post-election Board review. This inequity, however, is one which must be addressed by Congress, and not the courts.

**6.** The Board contends that if these two ballots are counted, a third ballot simply marked "yes" on the back with no markings on its front must be counted. The only indication of the existence of this third ballot is in the Board's brief. In the absence of any evidence of the existence of this third ballot, we cannot decide whether this ballot should be counted. We are certain that if it is proper to do so, the Board will reconsider the status of this ballot on remand.