The **WACKENHUT CORPORATION,** Petitioner, Cross-Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent, Cross-Petitioner.

No. 80–5705.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1982.

---

McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, Donald M. Hall, Miami, Fla., for petitioner, cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, David Fleischer, Jolane Findley, N.L.R.B., Washington, D. C., for respondent, cross-petitioner.

Before FAY, ANDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The Wackenhut Corporation (Wackenhut) petitions this court for review of the order of the National Labor Relations Board finding that Wackenhut violated sections 8(a)(5) and (1) of the National Labor Relations Act[1] by refusing to bargain with its employees' duly certified representative. The Board has cross-applied for enforcement of its order. The unit consists of Wackenhut's guards in Puerto Rico. The certified representative is Sindicato Puertorriquero de Guardias de Seguridad (Sindicato). Wackenhut admittedly refuses to bargain with

---

1. 29 U.S.C. § 151 *et seq.*

the union in order to test the validity of the certification runoff election conducted by the Board on November 27 and 28, 1978.

In balloting, which took place on August 31 and September 1, 1977, neither Sindicato, a rival union, nor "no union" won a majority. A runoff election between Sindicato and "no union" conducted on March 20 and 21, 1978 resulted in a "no union" decision, but was set aside by the Board. On November 27 and 28, a new runoff was held.

After challenged ballots had been counted, the tally from the new election stood at 550 votes for Sindicato and 548 votes against it. In addition, there were ten void ballots, two of which Wackenhut disputed. The Board ruled for Wackenhut with respect to one of the ballots which was counted as a valid vote against the union, but against it with respect to the other which was held to be void. If the latter ballot had been counted as a valid vote against the union, the vote would have been a 550 to 550 tie, the union would have failed to win a majority and the company would have won. The voiding of the single ballot resulted in certification of Sindicato.

Wackenhut makes two arguments in this court: (1) that the Board improperly set aside the first runoff election of March 20 and 21, 1978 which it won, and (2) that the Board improperly failed to count the ballot that would have resulted in a 550 to 550 tie.

*The Runoff Election*

■ Two actions by Wackenhut caused the Board to set aside the first runoff election. In a leaflet published two weeks before the election and in a letter to all employees four days later, Wackenhut announced "a better medical plan" for its employees at increased cost which would be fully absorbed by Wackenhut. In the letter Wackenhut said that the Burns Detective Agency was no longer in business in Puerto Rico and that it had been unable to stay in business because it was unionized. The announcement of a new medical plan brought

into play the principle that an employer may not grant new benefits or change existing conditions of employment during an election campaign for the purpose of influencing the employees' choice in the election. *See NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409, 84 S.Ct. 457, 460, 11 L.Ed.2d 435 (1964); *NLRB v. Dothan Eagle, Inc.*, 434 F.2d 93, 96 (5th Cir. 1970). The statement concerning Burns could be regarded as implying that Burns had left Puerto Rico in retaliation of the employees voting for a union and that Wackenhut would do the same thing. Such an implication was found in *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969) to violate section 8(a)(1) of the Act.

■ The determination as to whether an election has been conducted fairly or unfairly and whether it should or should not be set aside is primarily the responsibility of the Board. *Neuhoff Brothers Packers, Inc. v. NLRB*, 362 F.2d 611, 614 (5th Cir. 1966), *cert. denied*, 386 U.S. 956, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967). This court looks only to see whether the Board has reasonably exercised its discretion. *Gould, Inc. Electrical Components Division v. NLRB*, 610 F.2d 316, 318 (5th Cir. 1980); *Pepperell Manufacturing Co. v. NLRB*, 403 F.2d 520, 522 (5th Cir. 1968), *cert. denied*, 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 238 (1969). The Board's decision was true to the principles of *Exchange Parts* and *Gissel*; Wackenhut's challenge of the Board's action with respect to the first runoff election is clearly without substance.

*A Struck Ballot—Clearly Unambiguous*

The ballot in question was in standard form but printed in English and Spanish. *See* Appendix. It posed the question "Do you wish to be represented for purposes of collective bargaining by Sindicato ...." and instructed "mark an 'X' in the square of your choice." On one side a square was provided above which was written "Yes" and "Sí." On the other side was written

"No" and "No." The two sides were separated by a vertical line. On the ballot in question, the employee had placed an "X" above but not in *both* the "Yes" and the "No" squares. In addition, the employee had written the word "No" in the "No" square and also written what appears to be the word "No" in the "Yes" square.

Congress has entrusted the Board with a wide degree of discretion in establishing the procedures and safeguards necessary to ensure the fair and free choice of bargaining representatives by employees. *NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330–31, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946). A court will generally not interfere except in cases of glaring discrimination or abuse. *NLRB v. Olson Bodies, Inc.*, 420 F.2d 1187, 1189 (2d Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 966, 28 L.Ed.2d 237 (1971). The Fifth Circuit has twice reversed the Board's finding that a ballot was ambiguous in circumstances which were similar to those here. *See, e. g., NLRB v. Manhattan Corporation*, 620 F.2d 53 (5th Cir. 1980), *cert. denied*, 452 U.S. 916, 101 S.Ct. 3050, 69 L.Ed.2d 419 (1981) (ballot with the word "no" written on the back should not be voided but should have been counted as a vote against representation by the union); *NLRB v. Titche-Goettinger Co.*, 433 F.2d 1045 (5th Cir. 1970) (where ballots had contained no marking on their faces but only the word "no" on their backs, the ballots were not void but were counted as votes against representation). We seek to determine whether the Board's action here is "consistent with the admitted Board policy of attempting to give effect to the voters' intent whenever possible." 433 F.2d at 1048. Although it has been argued that abuse of discretion is the proper standard, we find support for our approach which requires us to determine whether the Board is consistently applying its stated policy. *See NLRB v. Wrape Forest Indus.*, 596 F.2d 817, 819 (8th Cir. 1979); *Roberts Door & Window Co. v. NLRB*, 540 F.2d 350 (8th Cir. 1976); *NLRB v. Tobacco Processors, Inc.*,

456 F.2d 248 (4th Cir. 1972) (citing *Titche-Goettinger*). The issue of the standard of review may be much ado about nothing. If the Board inconsistently applies its "policy," it may thereby abuse its discretion.

This is an easier case than either *Titche-Goettinger* or *Manhattan*. The Board had a long-standing policy of voiding ballots not marked on their face. No such consistent policy exists here. It is difficult to distinguish the ballot here found to be ambiguous from those found to be unambiguous by the Fifth Circuit in the cases cited above. The Board in its brief appears to be splitting hairs. The cases it cites indicate that very similarly marked ballots have been validated by the Board.

The ballot in this case, as in all Board elections, directed the voter to "MARK AN 'X' IN THE SQUARE OF YOUR CHOICE," and 99 percent of the voters followed this instruction.[11] [The ballots were printed in both English and Spanish, since some of the employees spoke and read only Spanish.] It would be within the Board's discretion to adopt a policy of rejecting any ballot not marked in precise conformity with its instructions. *NLRB v. Whitinsville Spinning Ring Co.*, 199 F.2d 585, 588 (1st Cir. 1952). However, the Board has rejected such a rigid rule in favor of counting irregularly marked ballots whenever the intent of the voter is clearly apparent. *Columbus Nursing Home, Inc.*, 188 NLRB 825 (1971). Thus, a ballot with the word "Yes" (in English or any other language) in the "Yes" box is counted as a valid vote for union representation,[12] [*NLRB v. Metro-Truck Body, Inc.*, 613 F.2d 746, 749 (9th Cir. 1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854] while a ballot with the word "No" written in the "No" box (or in the "Neither" box where two unions are competing) is counted as a valid vote against representation.[13] [*Marshall, Meadows & Stewart, Inc.*, 59 NLRB 1286, 1287 (1944); *Gregg Moore Co.*, 178 NLRB 483 (1969).] Similarly, where the location

of a marking on a ballot makes clear the voter's intent, the ballot will be counted as valid. Thus, in *Knapp-Sherrill Co.*, 171 NLRB 1547, 1548 (1968), a ballot with no mark in the "YES" square, but with an "X" above the word "YES", was counted as a valid vote for union representation. Consistently with *Knapp-Sherrill*, the Board in this case counted as a valid vote against representation a ballot on which the only marking was a line adjacent to the word "NO"; the location of this line cannot reasonably be construed as indicating anything except an intent to vote against the Sindicato.

The same policy has also been applied to ballots with multiple markings. In two situations, the Board has found such ballots to be a sufficiently clear expression of the voter's intent to be counted as valid. One such situation involves ballots with markings in or near two squares, but on which an attempt has been made to erase or obliterate one of the markings. In such a case, the obvious inference is that the voter began to make a mark in one box, and either changed his mind or realized that he was not marking the box of his choice. Accordingly, he tried to erase that mark to indicate that it did not represent his final or real choice and to indicate that the remaining, unerased mark did. Such ballots are therefore counted as valid, whether for or against representation. *Abtex Beverage Corp.*, 237 NLRB 1271 (1978); *Gifford-Hill & Co.*, 181 NLRB 729 (1970). Cf. *NLRB v. Whitinsville Spinning Ring Co.*, 199 F.2d 585, 589 (1st Cir. 1952).

The second situation where a ballot with multiple marks has been found valid is where one of the markings, standing alone, clearly indicates a particular choice, and the remaining markings are consistent with that choice and appear to be designed merely to emphasize it. See, for example, *NLRB v. Martz Chevrolet, Inc.*, 505 F.2d 968, 969, 971 (7th Cir. 1974) (ballot with "X" in "YES" box and "Do I ever" on bottom of ballot held valid vote for representation); *Knapp-Sherrill Co.*, 171 NLRB 1547, 1548 (1968) (ballot with "X" in "NO" box and phrase indicating opposition to union in "YES" box held valid vote against representation).

Brief of NLRB 17–18.

The intent of the voter here is free from doubt. In response to a question "Do you wish to be represented for purposes of collective bargaining . . . ?" no clearer response could be given than to write "no" twice on a ballot. The Board's finding here that this ballot was ambiguous was inconsistent with the cases it cites above. The NLRB's petition for enforcement must be DENIED and its decision below REVERSED.

ESTADOS UNIDOS DE AMERICA
## JUNTA NAÇIONAL DE RELACIONES DEL TRABAJO
## PAPELETA SECRETA OFICIAL
Para Ciertos Empleados De

THE WACKENHUT CORPORATION

¿Desea usted estar representado para los fines de negociar colectivamente por

SINDICATO PUERTORRIQUEÑO DE GUARDIAS DE SEGURIDAD?

MARQUESE CON UNA "X" DENTRO DEL CUADRO DE SU SELECCION

| SI | NO |
|---|---|

NO FIRME ESTA PAPELETA. Dóblela y deposítela en la urna electoral.
Si usted daña esta papeleta devuélvala al Agente de la Junta y pídale una nueva.