NAPILI SHORES CONDOMINIUM HOMEOWNERS' ASSOCIATION and Napili Shores Rental Program, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

COLONY RESORTS, INC., d/b/a Napili Shores Resort, Respondent.

Nos. 89–70099, 89–70180.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1991.

Decided July 18, 1991.

Patrick H. Jones, Carlsmith, Wichman, Case, Mukai & Ichiki, Honolulu, Hawaii, for petitioners.

Peter Winkler, N.L.R.B., Washington, D.C., for respondent.

Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.

FLETCHER, Circuit Judge:

Napili Shores Condominium Homeowners' Association and Napili Shores Rental Program, Colony Resorts, Inc. dba Napili Shores Resort (collectively referred to as "Napili Shores"), petition this court for review of an order of the National Labor Relations Board finding that Napili Shores committed an unfair labor practice. The Board has filed a cross-application for enforcement of its order. We deny the petition for review and grant the cross-application for enforcement of the Board's order.

I.

This action arises out of a certification election in which a unit of workers of Napili Shores Resort, a resort located on Maui, Hawaii, voted to be represented by the International Longshoremen and Warehousemen's Union, Local 142 ("the Union"). Napili Shores filed objections to the election, alleging, in part, that improper supervisory involvement had occurred during the Union's campaign. The Board determined that no such improper supervisory involvement had occurred and certified the Union as the exclusive collective-bargaining representative. Thereafter, Napili Shores refused to bargain with the Union and the Union filed an unfair labor practice charge asserting that the employer had violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5). In response to the charge, Napili Shores admitted that it refused to bargain but contended that its conduct did not violate the Act because the Union was improperly certified. The Board subsequently granted summary judgment against Napili Shores, finding that all issues raised by the employer were or could have been litigated in the prior certification proceeding.

In reviewing the Board's decision in an unfair labor practice proceeding, we may consider the entire record of both the certification and unfair labor practice proceedings. *Magnesium Casting Co. v. NLRB,* 401 U.S. 137, 139–140, 91 S.Ct. 599, 600–01, 27 L.Ed.2d 735 (1971). However, we conduct a limited review of the Board's underlying certification decision. *NLRB v. Cal–Western Transp.,* 870 F.2d 1481, 1483 (9th Cir.1989). As stated by the Supreme Court, "Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946). Accordingly, we will not overturn a Board's decision to certify a union unless the Board has abused its discretion. *NLRB v. Cal–Western Transp.,* 870 F.2d at 1484; *Micronesian Telecommunications Corp. v. NLRB,*

820 F.2d 1097, 1102 (9th Cir.1987). The Board's order must be enforced if it correctly applied the law and if its findings of fact are supported by substantial evidence in the record. *NLRB v. Hawaiian Flour Mill*, 792 F.2d 1459, 1462 (9th Cir.1986).

## II.

■ Napili Shores contends that the Board erred in certifying the Union because the election was tainted by the pro-union support of Terry Mays, Chief of Maintenance at Napili Shores during the election period. Participation by supervisory personnel in a union organizing campaign will not per se invalidate an election. *Id.* Rather, such support for a union will serve as a ground for overturning a union election victory only when the supervisor's actions would reasonably tend either (1) to cause the employees to believe that the supervisor is acting on behalf of the employer and that the employer favors the union, or (2) to lead the employees to support the union because they fear future retaliation by the supervisor. *Id.; NLRB v. Island Film Processing Co.*, 784 F.2d 1446, 1452 (9th Cir.1986).

■ The record in this case offers scant support for Napili Shores' claim that Mays acted in any way that should invalidate the election. Specifically, the evidence suggesting that Mays improperly promoted the Union to his employees is limited to three pieces of hearsay testimony. First, another supervisor at Napili Shores, Donna Campbell, stated that Mays told her that the scheduled pay increases at Napili Shores were too low and "would only bring the employees close to the Union and that he told the employees that they may as well have a union." The hearing examiner, from his observation of Campbell's demeanor, believed that she was confused and had attempted to state that Mays told her, that "the employees may as well have a union." Second, according to Napili

Shores general manager Dave Brott, maintenance employee Mike Clintsman told him that Mays was "for the Union and ... had started this whole union thing and that if his employees wanted more money, they would have to go to the Union." Clintsman specifically denied making this statement to Brott. Third, Brott and Cockett, a Colony Resorts vice-president, in accounts that differed slightly, testified that at a meeting at which Mays was present the day after the alleged Clintsman–Brott conversation, Clintsman said that Mays told the employees that he "had done all he could do" for them and that if they wanted more money, they "would have to go outside to get outside assistance." Both Brott and Cockett further stated that Mays immediately denied making the statement, and that Clintsman responded "You may not have said it in those words but you did tell us we had to go outside to get help." Clintsman did not recall the Union being discussed at the meeting. No other evidence of Mays' pro-union communication to employees within the unit was introduced in the record.[1]

In contrast to the hearsay testimony of management personnel regarding Mays' pro-union conduct, two of Mays' employees testified that he asked the employees to support Napili Shores in the election. The record contains evidence that Mays spoke to every employee in the department except Clintsman and asked them to support the company in the election. Moreover, in his testimony, Mays denied telling the employees that they should seek the Union's help to raise their wages.

Based on the record, the ALJ concluded that invalidation of the election was unwarranted. The ALJ specifically credited Mays' testimony that he expressed no pro-union support to his employees. The ALJ also stated that even were he to credit all the employer's witnesses, he would still

---

**1.** Napili Shores argues that a meeting held by Mays with the supervisory employees the day before the election was, in all likelihood, a meeting to encourage the employees to vote for the Union, and therefore provides further evidence of Mays' pro-union activities. Uncontro-

verted testimony from an employee present at the meeting, however, indicates that Mays asked the workers to support the company in the election. Mays' testimony corroborates this account.

conclude that the employer failed to demonstrate sufficient objectionable conduct to warrant setting aside the election.

■ Napili Shores asks us to reject the ALJ's findings and to credit the testimony of its witnesses over the direct testimony of Mays. In an election case, the Board's findings concerning what events actually took place must be sustained so long as they are supported by substantial evidence in the record. *NLRB v. Hawaiian Flour Mill, Inc.*, 792 F.2d at 1462. In this regard, "[c]redibility findings of an administrative law judge will be overturned 'only if a clear preponderance of the evidence convinces us that they are incorrect.'" *NLRB v. Catalina Yachts*, 679 F.2d 180, 181 (9th Cir.1982) (quoting *NLRB v. Western Clinical Laboratory, Inc.*, 571 F.2d 457 (9th Cir.1978)). We think it self-evident that the presence in the record of three hearsay statements by interested witnesses fails to overcome the presumption of legitimacy accorded the Board's findings.

■ Similarly, we think it clear that Napili Shores offers no ground upon which to reverse the ALJ's finding that, even assuming that Mays made the pro-union statements to his employees that were attributed to him, they failed to taint the election. The Board's assessment of the significance of the facts as found is entitled to great deference and may not be overturned absent an abuse of discretion. *NLRB v. Hawaiian Flour Mill*, 792 F.2d 1459, 1463 (9th Cir.1986); *Scintilla Power Corp. v. NLRB*, 707 F.2d 419, 421 (9th Cir.1983). Based on the record, it is clear that no abuse of discretion occurred.

■ Even assuming that Mays made all the pro-union statements to his employees that were attributed him by the management witnesses, his statements would not reasonably tend to cause the workers to believe that Napili Shores supported the Union. All the statements attributed to Mays were clearly identifiable as his own, rather than Napili Shores', viewpoint. Moreover, Napili Shores, by its own actions, loudly and unmistakably proclaimed to the workers its antipathy toward the union; little possibility exists that the workers would have been confused about its views. Managers of Napili Shores told employees that they would be treated fairly by the company without obtaining outside help; directed supervisors, including Mays, to tell their employees that they would be better off without the Union; and held a meeting with employees two days before the election at which Cockett told employees that it was the company's position that there was no need to go to an outside party to get fair treatment. The record leaves little doubt that Napili Shores clearly communicated its position on the Union to its employees. As the Board has observed:

> If supervisors actively encourage employees to vote for the Union, and the employer takes no known stances to the contrary, the supervisory conduct might well imply to the employees that the employer favors the Union. Any such impression will be dissipated, however, if, in one way or another, the employer's antagonism to the Union is brought to the attention of the employees.

*Stevenson Equipment Co.*, 174 NLRB 865, 866 (1969).

■ Furthermore, the statements attributed to Mays by the managers, even if credited, also completely fail to demonstrate that Mays threatened or coerced employees, either directly or indirectly, into supporting the Union. Fear of retaliation is created when a pro-union supervisor's solicitation of employees "'contain[s] the seeds of potential reprisal, punishment, or intimidation.'" *NLRB v. Island Film Processing Co.*, 784 F.2d at 1452 (quoting *Global Marine Dev. Inc. v. NLRB*, 528 F.2d 92, 95 (9th Cir.1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 83 (1976). At most, the alleged statements suggest that Mays stated that he believed the Union would help the workers; there is no indication that Mays would have retaliated against them had they determined not to vote for the Union. Neither do the statements attributed to Mays by management employees indicate that Mays promised employees any future benefits if they supported the Union.

Napili Shores also challenges the Board's affirmance of the hearing officer's refusal to enforce a subpoena for Funaki Tupou, a former maintenance department employee with whom Mays allegedly spoke. Napili Shores contends that it properly subpoenaed Tupou on May 19, 1988, but that he failed to appear on either day of the hearing. The hearing officer refused the company's request to enforce the subpoena on the ground that Napili Shores did not produce the return post office receipt. *See* 29 C.F.R. § 102.114(b).

We need not determine whether the Board erred in determining the subpoena was not properly served because any error that may have occurred was harmless. Both parties at the hearing stipulated that in the event that the hearing examiner determined that Tupou had been properly served, the hearing examiner would consider Tupou's two-page affidavit in reaching his decision in order to alleviate the need for subpoena enforcement. While the hearing examiner ultimately determined that Tupou had not been properly served, he specifically considered the affidavit submitted by Tupou in formulating his decision.

### III.

The Board seeks sanctions against Napili Shores pursuant to Rule 38 of the Federal Rules of Appellate Procedure on the ground that Napili Shores' petition for review was frivolous. An award of sanctions is warranted when "the result is obvious and the arguments on appeal wholly lack merit." *McCarthy v. Mayo,* 827 F.2d 1310, 1318 (9th Cir.1987). In this case, the sole issue presented on appeal concerned whether the Board abused its discretion in overruling Napili Shores' election objection. Primarily at issue were the ALJ's findings of what events had occurred and the effect on the employees of the supervisor's asserted actions—both of which are areas in which we accord a high degree of deference to the Board. To meet this high standard of review, the employer proffered only three controverted pieces of hearsay testimony which, even if fully credited and

viewed apart from the evidence weighing against it, would not be sufficient to warrant overturning the election certification.

In these circumstances, we believe that the results of the appeal were obvious and an award of attorneys fees and single costs is justified. We find Napili Shores' persistence in proceeding with its meritless claim especially egregious because this pursuit has suppressed the rights of its workers to be represented in the manner they have chosen, a right carefully guarded by the National Labor Relations Act. It has been more than three years since the employees within the bargaining unit voted in favor of the Union; collective bargaining has yet to begin. Some penalty should attach as a result of the imposition made on the employees, the Union, the Board, and this court by the employer's carrying this meritless claim so far. Napili Shores' decision to proceed with this case, against the weight of all evidence, raises the troubling possibility that the petition for review was filed only for purposes of delay. Courts, we emphasize, are to be used as a means to resolve disputes, not as a weapon to postpone their inevitable outcome, no matter how distasteful that outcome may be to one party.

The order of the National Labor Relations Board is enforced in full. Attorneys fees and single costs are assessed.