972 F.2d 339
 140 L.R.R.M. (BNA) 2928
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ENGLANDER BEDDING COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Mid-Atlantic
Regional Joint Board, Amalgamated Clothing and
Textile Workers Union, AFL-CIO, CLC, Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
MID-ATLANTIC REGIONAL JOINT BOARD, Amalgamated Clothing and
Textile Workers Union, AFL-CIO, CLC, Intervenor,
v.
ENGLANDER BEDDING COMPANY, Respondent.
 Nos. 91-1259, 92-1039.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 8, 1992
Decided: July 22, 1992
 
 On Petition for Review and Cross-application for Enforcement of an Order of the National Labor Relations Board.SYN.L.R.B.
 ENFORCEMENT GRANTED.
 Argued: David Anthony Kadela, Schottenstein, Zox & Dunn, Columbus, Ohio, for Petitioner.
 Laurie Diane Dubrow, National Labor Relations Board, Washington, D.C., for Respondent.
 Jean Grumet, Assistant General Counsel, Amalgamated Clothing and Textile Workers Union, AFLCIO, CLC, New York, New York, for Intervenor.
 On Brief: James M. L. Ferber, Schottenstein, Zox & Dunn, Columbus, Ohio, for Petitioner.
 Jerry M. Hunter, General Counsel, D. Randall Frye, Acting Deputy General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Paul J. Spielberg, Deputy Assistant General Counsel, National Labor Relations Board, Washington D.C., for Respondent.
 Before ERVIN, Chief Judge, WILLIAMS, Senior United States District Judge for the Western District of Virginia, sitting by designation, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Englander Bedding Company ("Englander") petitions for review of a National Labor Relations Board ("NLRB") order which held valid a union representation election despite the fact that the supervising NLRB agent inadvertently allowed the proceedings in the voting area to be broadcast over the company's public address system. The NLRB has filed a cross-application for enforcement of its order requiring Englander, on the basis of the election results, to bargain with the union. We hereby grant enforcement of the NLRB order.
 
 I.
 
 2
 Englander is engaged in the manufacturing of mattresses and box springs at its facility in Parkersburg, West Virginia. It employs approximately 79 employees. On August 20, 1990, the Mid-Atlantic Joint Board, Amalgamated Clothing and Textile Workers Union, AFL-CIO (the "Union") filed a petition with the NLRB seeking certification as the collective bargaining representative of a unit of Englander's employees. On October 23, 1990, an election was held on Englander's business premises among the appropriate employees to determine whether the Union would be adopted as their bargaining representative.
 
 
 3
 The election was held in the employee lunchroom, adjacent to the manufacturing area. The NLRB agent supervising the election announced the opening of the polls on the company's public address system, which includes 18 speakers distributed across the manufacturing area of the plant. The system is accessed by a telephone handset located in the lunchroom. When the NLRB agent returned the handset to its cradle, he failed to break the connection. As a result, the public address system continued to transmit the sounds from the voting area throughout the plant. No employee alerted the election officials to the situation until after the close of the polls forty-five minutes later.[1]
 
 
 4
 The union won the election by a vote of 38 to 35, with four additional challenged ballots.[2] Englander filed several objections to the election. After conducting a hearing on the objections, an NLRB hearing officer recommended that the NLRB overrule Englander's objections in their entirety. Englander filed exceptions to the hearing officer's report, relating exclusively to the argument that the election was invalid because of its inadvertent broadcast on the public address system. On July 24, 1991, the NLRB issued its decision, rejecting Englander's argument and certifying the Union as the exclusive bargaining representative of the employees in the designated unit.
 
 
 5
 Englander subsequently refused to negotiate with the Union. On August 19, 1991, the Union filed an unfair labor practice charge with the NLRB. Englander's answer admitted its refusal to bargain but disputed the propriety of the Union's certification. On November 26, 1991, the NLRB issued a further decision reaffirming that the Union was the certified collective bargaining representative of the Englander employees and ordering Englander to bargain on request with the Union. Englander petitions for review of this order, and the NLRB cross-petitions for its enforcement.
 
 II.
 As this court has recently stated:
 
 6
 The conduct and certification of representation elections constitute an area of labor relations uniquely within the [NLRB's] expertise. Consequently, we are reluctant indeed to upset a decision that an election represents the free choice of the employees in an appropriate bargaining unit.
 
 
 7
 Industrial Acoustics Co., Inc. v. NLRB, 912 F.2d 717, 719 (4th Cir. 1990) (citation omitted). Accordingly, such determinations are evaluated on an abuse of discretion standard. Id.
 
 
 8
 In this case the NLRB adopted the finding of the hearing officer that "the Board Agent's conduct neither tended to destroy confidence in the election process nor impugned the Board's election standards." J.A. at 326. This conclusion was based on several factors. First, there was no evidence that the incident "impacted on either the employees' freedom of choice or the secrecy of their ballots." Id. Questioning of the employees revealed that they were only able to overhear, at most, routine conversations between the NLRB agent, the election observers, and prospective voters regarding "names of voters, instructions on how to mark their ballots, challenges and reasons therefore [sic], etc." J.A. at 327. In addition, there was no objective evidence that the functioning of the public address system caused any trepidation to vote on the part of the employees. In fact, 78 of the 79 eligible voters participated in the election. Moreover, no employee was concerned enough about the operation of the public address system to alert the election officials until after the completion of the election.
 
 
 9
 The most objectionable consequence of the operation of the public address system was the potential broadcast of the names of voters. Clear precedent from the NLRB establishes that a set of circumstances allowing for a list to be compiled of the names of voters violates the standards for a fair election. See International Stamping Co., Inc., 97 N.L.R.B. 921 (1951). However, the NLRB has also required an affirmative showing that the employees knew or reasonably could have feared that their names were being recorded. A.D. Juillard and Co., 110 N.L.R.B. 2197 (1954). In this case, there was no such evidence. In fact, the employees indicated indifference to the fact that the public address system was functioning.
 
 
 10
 In sum, there was more than adequate support for the NLRB's conclusion that neither the standards for a fair election nor the neutrality of the NLRB were prejudiced by the inadvertent functioning of the public address system. As a result, it was not an abuse of discretion for the NLRB to uphold the election and certify the Union as the exclusive bargaining representative of the employees.
 
 III.
 
 11
 The NLRB has moved for sanctions against Englander, pursuant to Rule 38 of the Federal Rules of Appellate Procedure, for pursuit of a frivolous appeal. We deny the NLRB's motion. Despite the fact that Englander presents a losing argument, we do not find its argument to be frivolous. Certainly there are situations where the broadcast of an election could serve to prejudice the election's outcome. No prior decision of the NLRB or this court has completely foreclosed Englander's argument. While Englander's burden in proving that the NLRB abused its discretion in validating the election was a heavy one, it cannot be said that Englander's arguments on appeal "wholly lack[ed] merit." Cf. Napili Shores Condominium Homeowners' Ass'n v. NLRB, 939 F.2d 717, 721 (9th Cir. 1991) (imposing sanctions). Accordingly, we deny the sanctions motion.
 
 IV.
 
 12
 We hereby grant enforcement of the NLRB's order designating the Union as the exclusive bargaining representative of a specified unit of Englander's employees and requiring Englander to negotiate with the Union. We deny the NLRB's motion for sanctions against Englander.
 
 ENFORCEMENT GRANTED
 
 
 [1]
 The record indicates that members of Englander's management were aware of the tendency of the public address system to malfunction in this manner but did not inform the NLRB agent about the possibility of this occurrence
 
 
 [2]
 It was determined that at least two of the challenged ballots were cast in favor of the union, making the challenged ballots non-determinative of the election outcome