TCI WEST, INC.; San Leandro Cable Television, Inc., d/b/a TCI Cablevision of Hayward; TCI Cablevision of California, Inc.; United Cable Television, d/b/a TCI Cablevision of Hayward ("TCI"), Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Teamsters Local 856, Nonaligned Intervenor.

NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner,

v.

TCI WEST, INC.; San Leandro Cable Television, Inc., d/b/a TCI Cablevision of Hayward; TCI Cablevision of California, Inc.; United Cable Television, d/b/a TCI Cablevision of Hayward ("TCI"), Petitioners/Cross–Respondents.

TEAMSTERS LOCAL 856, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

TCI West, Inc.; San Leandro Cable Television, Inc., d/b/a TCI Cablevision of Hayward; TCI Cablevision of California, Inc.; United Cable Television, d/b/a TCI Cablevision of Hayward ("TCI"), Intervenors.

Nos. 97–70135, 97–70309 and 97–70529.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1998.

Decided June 9, 1998.

Henry E. Farber, Davis Wright Tremaine, LLP, Seattle, Washington, for the petitioners

in No. 97–70135, the cross-respondents in No. 97–70309, and the intervenors in No. 97–70529.

Sonya Spielberg, National Labor Relations Board, Washington, DC, for the respondent in No. 97–70135 and No. 97–70529 and the cross-petitioner in No. 97–70309.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for the intervenor in No. 97–70135 and the petitioner in No. 97–70529.

Before: SCHROEDER, FARRIS and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

TCI West, Inc. ("TCI"), a cable television company, petitions for review of an order of the National Labor Relations Board ("NLRB" or "Board") finding that TCI engaged in an unfair labor practice ("ULP") by refusing to bargain with the International Brotherhood of Teamsters, Local Union 856, AFL–CIO (the "Union"). *See TCI West, Inc.*, 322 N.L.R.B. No. 174, 1997 WL 30604 (1997). TCI contends that when the Board tallied the votes in a decertification election, the Board agent improperly declared void a ballot that contained a single line in the "Yes" box and a complete "X" in the "No" box. This challenged ballot was sufficient to affect the outcome of the election.

The Board had jurisdiction over the underlying ULP proceeding pursuant to section 10(a) of the National Labor Relations Act, 29 U.S.C. § 160(a). We have jurisdiction pursuant to 29 U.S.C. § 160(e) and (f), and we reverse.

# I. BACKGROUND

An employee of TCI filed a petition under 29 U.S.C. § 159(c) seeking to decertify the Union as the bargaining representative of some TCI employees. The NLRB conducted a decertification election pursuant to a stipulated election agreement. The tally of the ballots resulted in 63 votes in favor of the Union and 62 votes against it. The NLRB agent declared one ballot void, the one at issue here, which contained a single line in the "Yes" box and a complete "X" in the "No" box.[1] TCI challenged the ruling, contending that the voter clearly intended to vote against the Union.

The Board's Regional Director issued a Report and Recommendation on Challenged Ballots, recommending that the ballot be found void and that a Certification of Representative be issued. TCI filed an exception to this report, but on September 27, 1996, the Board issued a decision adopting the Regional Director's recommendations.[2] Chairman Gould dissented, stating that the voter had clearly indicated an intent to vote "No."

When TCI refused to bargain with the Union, the Union filed a ULP charge. The NLRB issued a complaint against TCI, alleging that TCI had violated 29 U.S.C. § 158(a)(1) and (5) by refusing to bargain with the Union. TCI contended that it had no legal obligation to bargain with the Union because the Board had improperly certified the Union. The General Counsel of the NLRB filed a motion for summary judgment, asserting that the Board had already rejected TCI's defense. The Board granted the motion for summary judgment and issued an order requiring TCI to bargain with the Union.[3]

# II. STANDARD OF REVIEW

We review a decision of the NLRB to determine whether it "correctly applied

---

**1.** A copy of the challenged ballot is appended to this opinion as Appendix 1.

**2.** The Board's original decision, issued on April 15, 1996, was rescinded on April 18, 1996. On October 4, 1996, the Board vacated the September 27, 1996 decision, issuing a third decision which was the same as the second, except that it

added a footnote overruling the challenged ballot and tallying it as void, resulting in 63 votes for the Union and 62 against it.

**3.** Although Chairman Gould still believed that the ballot should have been counted, he joined in the decision because TCI had raised no new issues in the proceeding.

the law and whether its findings of fact are supported by substantial evidence." *Associated Ready Mixed Concrete, Inc. v. NLRB,* 108 F.3d 1182, 1184 (9th Cir.1997); *see also Napili Shores Condominium Homeowners' Ass'n v. NLRB,* 939 F.2d 717, 719 (9th Cir. 1991). The Board's decision to certify a union is reviewed for an abuse of discretion. *Id.* at 718.

## III. DISCUSSION

■ The general rule in this Circuit and most other circuits, as well as the policy admitted by the Board, is that a ballot should be counted where a voter's intent is clear, despite irregularities in the voter's mark. *See NLRB v. Consolidated Liberty, Inc.,* 672 F.2d 788, 791 (9th Cir.1982) ("The rule of this Circuit is that in representation elections, if the voter's intent is clearly manifested, the ballot is to be counted, even if the voter has not followed the designated procedure."); *see also, e.g., NLRB v. Duriron Co.,* 978 F.2d 254, 257 (6th Cir.1992) ("A ballot should normally be counted if there is a clear expression of preference, regardless of an irregularity in the voter's mark."); *NLRB v. Connecticut Foundry Co.,* 688 F.2d 871, 875 (2d Cir.1982) ("The general rule is that a ballot should be counted if there is a clear expression of preference, regardless of the irregularity of the mark on the ballot.") (internal quotations omitted); *Wackenhut Corp. v. NLRB,* 666 F.2d 464, 467 (11th Cir.1982) ("We seek to determine whether the Board's action here is consistent with the admitted Board policy of attempting to give effect to the voters' intent whenever possible.") (internal quotations omitted). Thus, courts have found ballots to be valid where the voter wrote "no" in both the "Yes" and "No" boxes, *Id.* at 467–68, left the ballot blank on its face but wrote "no" on the reverse side, *Connecticut Foundry Co.,* 688 F.2d at 875, and wrote "Do I ever" under the "X" in the "Yes" box, *NLRB v. Martz Chevrolet, Inc.,* 505 F.2d 968, 971 (7th Cir.1974).

The NLRB admits that its general policy is to uphold the voter's intent if that intent is clear. However, the Board also has a competing policy to void a ballot if it contains two marks, either of which would be sufficient to

indicate the voter's intent, unless the voter has attempted to erase or scratch out one of the marks. Taken together, these policies may be described as follows: (1) If the voter's intent is clear, the ballot is valid; (2) If there are marks in both the "Yes" and "No" boxes, either of which alone would be sufficient to indicate the voter's intent, the voter's intent is presumptively *un* clear, and the ballot is void; (3) But if the voter has attempted to erase or otherwise obliterate one of those two marks, the voter's intent must be determined. The Board contends that this policy is needed in order to provide Board agents with "simple and clear-cut guidelines" and avoid subjective determinations.

Although a simple bright-line rule to avoid subjective determinations by Board agents is a desirable goal, the Board's distinction between attempted erasure/obliteration and no such attempt is "splitting hairs" and does not actually provide a bright-line rule. *See Wackenhut Corp.,* 666 F.2d at 467 ("It is difficult to distinguish the ballot here found to be ambiguous from those found to be unambiguous by the Fifth Circuit in the cases cited above. The Board in its brief appears to be splitting hairs."). An examination of NLRB decisions reveals how difficult (and how subjective) it is to enforce this "attempted erasure" policy. For instance, the NLRB has declared ballots valid where the voter scratched over an "X" in the "Yes" box and marked an "X" in the "No" box, *Brooks Bros., Inc.,* 316 N.L.R.B. 176, 1995 WL 37611 (1995), attempted to erase a line in the "No" box and placed "several diagonal lines, superimposed one on top the other," in the "Yes" box, *J.L.P. Vending Co.,* 218 N.L.R.B. 794, 1975 WL 5614 (1975), and marked an "X" in both boxes, scratching over the "No" vote with circular markings, *Abtex Beverage Corp.,* 237 N.L.R.B. 1271, 1978 WL 7948 (1978). *See also Mediplex of Conn., Inc.,* 319 N.L.R.B. 281, 1995 WL 607764 (1995) (affirming the finding of an Administrative Law Judge that a ballot with an "X" in both boxes was valid because there were smudges in the "Yes" box indicating an attempted erasure). On the other hand, the Board declared a ballot void where the voter "shaded over" an "X" in the "No" box and marked an "X" in the "Yes" box, reasoning

that the voter's intent was not free from doubt. *Mercy College,* 212 N.L.R.B. 925, 1974 WL 11396 (1974). In reliance on *Mercy College,* the Board also declared void ballots marked similarly to the one challenged here, with an "X" in one box and a line in the other. *See Bishop Mugavero Ctr. for Geriatric Care, Inc.,* 322 N.L.R.B. 209, 1996 WL 556733 (1996); *Caribe Indus. and Elec. Supply, Inc.,* 216 N.L.R.B. 168, 1975 WL 5291 (1975).

■ The NLRB has two policies at war—one to uphold the voter's intent if possible, and the other to establish a bright-line rule. The problem is that the distinction the Board draws here does not provide a bright-line rule. Rather, the inquiry will merely focus on whether the voter has made an attempt at erasure or obliteration because, if so, the Board will determine whether the voter's intent is clear. If no obliteration was attempted, the bright-line rule will apply, voiding the ballot. It will all depend on how the Board categorizes the ballot, as a "two sufficient mark" ballot, which will always be voided, or as an erasure, which will require a subjective determination of the voter's intent. Thus, the subjective-determination battleground is merely shifted to a fight about how to characterize what the voter has done. But what is the difference between "scratching out" an "X", which the Board found clearly expressed the voter's intent to obliterate the mark in *Brooks Bros.,* 316 N.L.R.B. 176, and "shading over" an "X", which the Board found was too ambiguous in *Mercy College,* 212 N.L.R.B. 925? The Board disagreed with its own Regional Directors about the clarity or ambiguity of the ballots in both cases. And what if the voter cleanly erases only part of the mark, leaving half a line but erasing the rest so cleanly that the Board cannot detect the erasure and thus characterizes the ballot as containing two sufficient marks? What if there is a slight smudge on the extra mark that the challenging party claims is an attempted erasure but the Board concludes is merely a result of sweaty hands? The determination of whether or not a voter has attempted erasure is just as subjective as determining the voter's intent.

If, instead, the Board focused on its policy of giving effect to the voter's intent whenever possible, there still would be subjective determinations but without the arbitrary characterization of attempted erasure or not. In fact, the Board and the courts have already engaged in such determinations, and they are not that difficult, for, as then-Judge Breyer stated, "one glance at the ballot is worth a thousand words." *NLRB v. Newly Weds Foods, Inc.,* 758 F.2d 4, 12 (1st Cir.1985). *See also Abtex,* 237 N.L.R.B. 1271 (where "a reference to the ballot quickly demonstrate[d]" the voter's intent); *J.L.P. Vending,* 218 N.L.R.B. 794 (where the Board engaged in subjective determination, noting that the voter's "placement of several heavy lines ... for emphasis" was part of what made his choice "clear").

In the case at bench, there is one incomplete line in the "Yes" box and a dark, obviously emphasized, complete "X" in the "No" box. As Chairman Gould noted in his dissent, the voter clearly intended to cast a "No" vote. Contrary to the Union's contention, this ballot is not open to the interpretation that the voter intentionally submitted a void ballot. This ballot is not at all similar to one in which the voter placed "X"'s in the "Yes" boxes of two different unions, as well as the "No union" box, and then wrote "Yes" at the top. *See Arthur Sarnow Candy Co.,* 311 N.L.R.B. 1137, 1993 WL 257402 (1993). The two marks are not even susceptible to being interpreted as equal "Yes" and "No" votes, considering the incompleteness of the line in the "Yes" box and the emphasis of the "X" in the "No" box.

Finally, we addressed a situation nearly identical to this one in *NLRB v. Leonard Creations,* 638 F.2d 111 (9th Cir.1981), where we reversed the Board's finding that a ballot that contained marks in both the "Yes" and "No" boxes was invalid. We acknowledged that the NLRB "has often held that marks in two alternative squares on a ballot render it invalid," but stated that the underlying principle was to validate a ballot where the voter's intent was clear. *Id.* Finding "little support for the Board's conclusion that the voter's intent was unclear," we reversed the Board's order. *Id.* at 113. The voter's in-

tent in *Leonard Creations* was even less clear than in the instant case because the partial mark in the "Yes" box was almost a complete "X" and the "X" in the "No" box was not emphasized. *See id.* at 112. *Leonard Creations* clearly controls this case.

The NLRB argues that we are free to disregard *Leonard Creations* because of the following statement in *Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers,* 861 F.2d 1124 (9th Cir.1988) (en banc):

> We hold, therefore, that if prior decisions of this court constitute only deferential review of NLRB interpretations of labor law, and do not decide that a particular interpretation of statute is the only reasonable interpretation, subsequent panels of this court are free to adopt new and reasonable NLRB decisions without the requirement of en banc review.

*Id.* at 1134–35 (citation and footnote omitted). But *Mesa Verde* holds that en banc review is not needed if the prior decision of this court constituted "only deferential review of NLRB interpretations of labor law." *Id. Leonard Creations* was *not* a deferential review of NLRB interpretation of labor law; it *reversed* the Board's decision.

In *Mesa Verde,* the NLRB had a policy of permitting unilateral repudiation of a pre-hire agreement in the construction industry by either the employer or the union, a policy that we had upheld in several decisions. *See id.* at 1127–28. The Board later expressly rejected its previous position and decided not to allow such unilateral repudiation. The issue in *Mesa Verde,* then, was whether a panel of this court was free to adopt a Board decision that conflicted with circuit precedent. *See id.* at 1134. However, *Mesa Verde* is inapposite because, contrary to the Board's assertion, the Board did not change its policy regarding ballots with two sufficient marks *after Leonard Creations* was decided, but before. The line of decisions espousing the "two sufficient marks" policy began with *Mercy College* in 1974, and *Leonard Creations* was decided in 1981.[4]

Further, contrary to what the NLRB implies, *Leonard Creations* did not rely solely on *Belmont Smelting & Ref. Works, Inc.,* 115 N.L.R.B. 1481 (1956), to support its conclusion. Rather, *Leonard Creations* relied on the general principle of validating a ballot where the voter's intent is clear. *See Leonard Creations,* 638 F.2d at 112.

■ It is true that the Board's decisions are to be accorded deference, reviewed only for an abuse of discretion. *See California Pac. Med. Ctr. v. NLRB,* 87 F.3d 304, 307 (9th Cir.1996) ("Courts of appeals may overturn the Board's interpretations of the National Labor Relations Act only if they are not reasonably defensible.") (internal quotations omitted). However, as the Eleventh Circuit stated in *Wackenhut Corp.,* "[i]f the Board inconsistently applies its policy [of attempting to give effect to the voters' intent whenever possible], it may thereby abuse its discretion." 666 F.2d at 467. We have found fault with Board attempts at bright-line rules before, emphasizing the rule of counting a ballot if a clear preference is expressed. *See Consolidated Liberty,* 672 F.2d at 791 n. 5 (eschewing the Board's rule of voiding ballots marked only on the back side because the voter's intent was clearly indicated by the words "no" and "no union" on the back). Just as in *Leonard Creations,* the ballot here does not support the Board's conclusion that the voter's intent was not clear. *See* 638 F.2d at 113.

The union argues that a ballot with such markings would be voided in a general election despite the constitutional right to vote in a public election. This may be true; however, unlike general elections, these elections are overseen by the Board, and the Board has chosen to engage in subjective determinations in order to give effect to the voter's intent. *See Mercy College,* 212 N.L.R.B. 925 (noting that the Board has not adopted a rigid policy of voiding all ballots marked in an unorthodox manner). Since the Board has chosen such a policy, it should apply it even-handedly.

---

4. In addition, the emphasis in the *Mercy College* line of cases was on whether the voter's intent was clear, not on what the Board calls its "settled" policy of distinguishing between attempted

obliteration/erasure and no attempt. *See Bishop Mugavero,* 322 N.L.R.B. 209; *Caribe,* 216 N.L.R.B. 168.

## IV. CONCLUSION

The Board's decision in this case is contrary to its own policy of giving effect to the voter's intent. Further, it directly conflicts with our decision in *Leonard Creations*, which remains the law of the circuit. We therefore grant TCI's petition for review in No. 97–70135 and deny enforcement of the Board's Decision and Order. We deny the NLRB's cross-petition in No. 97–70309 and the Union's petition in No. 97–70529 to enforce the Board's Order.